18214

Diane Stockman McLAUGHLIN, Appellant, v. John Emmette McLAUGHLIN, Respondent

(136 S. E. (2d) 537)

*Messrs. Horger & Horger,* of Orangeburg, *Kermit S. King,* of Columbia, and *Lever & Shealy,* of Lexington, *for Appellant,*

*Furman R. Gressette, Esq.,* of St. Matthews, *for Respondent,*

*Messrs. Horger & Horger,* of Orangeburg, *Kermit S. King,* of Columbia, and *Lever & Shealy,* of Lexington, *for Appellant, in Reply,*

May 13, 1964.

TAYLOR, Chief Justice.

This is an appeal from a decree of the Court of Common Pleas of Calhoun County, denying the plaintiff, Diane Stockman McLaughlin, a divorce based on the grounds of constructive desertion and physical cruelty.

The defendant, John Emmette McLaughlin, filed an answer in which he generally denied the allegations of the complaint and sought the aid of the Court in bringing about a reconciliation between the parties.

The matter was referred to a Special Referee, who in his report of February 22, 1963, concluded that the evidence established physical cruelty and constructive desertion and recommended that plaintiff be granted a complete and absolute divorce. Exceptions to this report were taken by the defendant, and the Circuit Judge thereafter issued his decree on May 9, 1963, by which he denied plaintiff a divorce for the reason that "the testimony is totally lacking corroboration by any witness or by any additional corroborating circumstances" and plaintiff appeals.

The parties hereto were married September 14, 1957, in Calhoun County and have one child, a daughter, born November 7, 1959. They lived together as husband and wife until October 9, 1960, at which time plaintiff, together with the child, left the home and went to live with her parents, who also reside in Calhoun County, and have lived separate and apart since that time.

In his report the Special Referee properly concluded that "In this case proof of physical cruelty is necessary to establish constructive desertion since the plaintiff is compelled to show that she was forced to leave the defendant because of conduct sufficient in itself to constitute a ground for divorce. All other essential elements of desertion are present in this case. The primary issue, therefore, is whether or not the evidence is sufficient to establish the charge of physical cruelty." See *Machado v. Machado,* 220 S. C. 90, 66 S. E. (2d) 629; and *Mincey v. Mincey,* 224 S. C. 520, 80 S. E. (2d) 123.

This being an equity case with no concurrent findings of fact, this Court has jurisdiction to consider the evidence and find the facts in accord with our view of the preponderance or greater weight of the evi-

dence. *Harvey v. Harvey*, 230 S. C. 457, 96 S. E. (2d) 469.

Plaintiff recites three isolated events in support of her charge of physical cruelty, the first occurring in November, 1957, during the second month of marriage, in which she testified defendant "knocked" her jaw out of place, and the second was on New Year's Eve, 1958, when she stated defendant hit her in the face with his fist, which she believed left a black eye or black mark on her face, and the third occasion occurred approximately May 1, 1960, when defendant slapped plaintiff, while she was holding their daughter, knocking her to the floor. Defendant caught the child before she fell.

The trial Judge concluded that there is no corroboration of plaintiff's testimony relating to physical cruelty and denied the divorce.

In *Brown v. Brown*, 215 S. C. 502, 56 S. E. (2d) 330, 15 A. L. R. (2d) 163, the Court held with respect to the necessity of corroboration in divorce actions that a divorce will not be granted on the uncorroborated testimony of a party or the parties to the suit; however, as the main reason for the rule is to prevent collusion, it is not generally deemed inflexible and may be relaxed where it is evident that collusion does not exist. When the rule is deemed applicable, corroboration is required of all material allegations of the complaint necessary to sustain a decree of divorce; but such corroboration need not in itself be sufficient to warrant such relief. Corroboration may be by either direct or circumstantial evidence. All testimony is not required to be corroborated in every particular. It may be corroborated by testimony of third persons as to some of the causes alleged or by testimony to acts other than those specifically alleged which tend to prove those that are.

The testimony of plaintiff's witnesses does not corroborate her charges of physical cruelty. She, however, con-

tends that corroboration is not required where the divorce is contested and there is no question of collusion between the parties; and, further, that if in this case the Court requires corroboration, the testimony of the defendant sufficiently corroborates plaintiff's allegations of physical cruelty.

In South Carolina the rule requiring corroboration is not mandatory and the necessity of such to a large extent depends upon the facts and circumstances of each case. Some states have adopted a rule that where a divorce case is contested, the Court may grant a divorce on plaintiff's uncorroborated testimony. This does not appear to us to be the proper basis upon which to require the rule. The degree of corroboration required may be greater when the divorce is uncontested and only slight corroboration may be sufficient in certain contested divorces; however, if. no corroboration is shown, then the burden is upon the plaintiff to show why.

Defendant in his testimony admits committing an act of physical violence upon plaintiff approximately on May 1, 1960, and also committing a similar act in April, 1960. Although both plaintiff and defendant testified to the altercation on May 1, 1960, their respective versions of what occurred are substantially in conflict.

"The testimony of plaintiff may also usually be corroborated by that of defendant, in the absence of collusion, or by testimony as to admissions made by defendant, and it has been held that corroboration may be obtained from the testimony given during the examination and cross examination of the adverse party and his witnesses. There is, however, authority to the effect that corroboration may not be sought from defendant's testimony, admissions, or confessions; * * *" 27 A. C. J. S., Divorce, § 136 (b), p. 459. See Annotation 15 A. L. R. (2d) 170.

In the absence of collusion or connivance testimony of the adverse party may furnish necessary corroboration in certain instances; however, such corroboration is looked upon with suspicion if there is an absence of other corroborating testimony or circumstances.

In instant case, plaintiff's testimony is corroborated by defendant as to only one act of cruelty, and although defendant has admitted striking plaintiff on another occasion, not related by plaintiff, we are of opinion defendant's testimony does not sufficiently corroborate plaintiff as a single act of physical cruelty does not ordinarily constitute ground for divorce unless it is so aggravated and atrocious as to endanger life or unless the act indicates an intention to do serious bodily harm.

Defendant in his brief for the first time takes the position that the acts of physical cruelty relied upon by plaintiff have been condoned. Plaintiff's suggestion that the defense of condonation may not now be considered, because not pleaded below, is without merit for the reason that public policy demands that marriages shall be protected and made permanent; and mere procedural rights of the parties shall not abrogate the duty of the Courts in regard to the termination of the state of matrimony.

Ordinarily condonation is an affirmative defense that must be pleaded; however, if the evidence shows condonation, it is the duty of the Court even without pleading to find to that effect. See *Hodges v. Hodges,* 154 Neb. 178, 47 N. W. (2d) 361; *Wright v. Wright,* 153 Neb. 18, 43 N. W. (2d) 424; *Hash v. Hash,* 115 Ind. App. 437, 59 N. E. (2d) 735; *Thomason v. Thomason,* Tex. Civ. App., 332 S. W. (2d) 148; *Hayden v. Hayden,* 326 Mass. 587, 96 N. E. (2d) 136; *Hamburger v. Hamburger,* 60 Cal. App. (2d) 430, 141 P. (2d) 453.

"Condonation in the law of divorce means forgiveness, express or. implied, by one spouse for a breach of marital duty by the other. More specifically, it is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated, and that the offender shall thereafter treat the forgiving party with conjugal kindness." 27 A. C. J. S., Divorce, § 59, p. 194.

The defense of condonation was recognized in South Carolina at an early date in the case of *Threewits v. Threewits,* 1815, 4 S. C. Eq., 4 Desaus. Eq. 560. An action for alimony or for support and separate maintenance. There the Court said:

"To be sure, if a woman forgives ill usage and returns to her husband, on promises of good usage, she shall not afterwards obtain the protection and assistance of this Court, if those promises had been faithfully kept, and she again leaves her husband from caprice; but if there are clear indications of a breach of those promises, and some actual ill usage, she is not bound to wait for extremities as in the first instance, but may depart as soon as she finds the promises violated, and her husband returning to his old bad habits. She has a right to judge of the future by the past; and the Court will connect the whole of his conduct, in order to form a correct judgment."

In *Wise v. Wise,* 60 S. C. 426, 38 S. E. 794, it was held that the husband's misconduct had been condoned by the reconciliation of the parties and the living together as man and wife for about 12 months. It appears from the *Wise case* the Court considered condonation as an absolute forgiveness as it was stated that if "the plaintiff is entitled to her claim of alimony, the grounds of such claim must be sought for in the conduct of the husband after such reconciliation took place."

However, in *Levin v. Levin,* 68 S. C. 123, 46 S. E. 945, the Court said:

"* * * It is quite clear that a decree for alimony cannot be based upon wrongs which have been condoned, all misconduct having ceased after such condonation. But to hold that cruelties of a husband which have been forgiven are not to be considered when others have followed until the wrong becomes unbearable would not be to give encouragement and support to a wife's patient endurance, but to mock at it." See *Cleveland v. Cleveland,* 128 S. C. 460, 122 S. E. 500.

The parties here lived together as husband and wife for approximately five months after the last act of physical cruelty relied upon by plaintiff. They occupied the same living quarters and there is a presumption that they engaged in marital relations. *Boozer v. Boozer,* 242 S. C. 292, 130 S. E. (2d) 903.

"Condonation may be presumed from cohabitation; and lapse of time, or a continuance of marital cohabitation with knowledge of the offense, raises a presumption of condonation. Although this presumption may be rebutted by evidence of the accompanying circumstances, the burden of rebutting it is on plaintiff." 27 A. C. J. S., Divorce, § 123(9), p. 423.

"Most of the controversy in this field is with respect to what conduct on the part of the spouse offended against will amount to implied condonation. This is largely a question of fact, but it is well established that condonation can only occur if the spouse offended against (1) had knowledge of the offense or misconduct allegedly condoned, and (2) voluntarily forgave it or voluntarily engaged in the conduct which is asserted to amount to implied forgiveness. * * * Condonation is primarily a state of mind. The existence of such a state of mind may appear either from language used, from conduct, or from both. The forgiveness may be either express or implied. A full resumption or continuance of marital cohabitation after the conduct complained of and with knowledge thereof, for any considerable period of time, quite conclusively shows an intention to forgive or condone such conduct." Nelson, Divorce and Annulment, Second Edition, Vol. 1, Sections 11.01 and 11.02, p. 375. See Annotation, 32 A. L. R. (2d) 107.

In instant case we are convinced that plaintiff condoned defendant's actions by living with him, as husband and wife, from approximately May 1, 1960, until October 9, 1960. During this time relations between the parties appear to have been strained; however, there was no evidence of any physical harm done and plaintiff

has offered no explanation as to why she did not leave her husband sooner.

The authorities appear to be in agreement that condonation is a conditional forgiveness or remission of a previous offense or misconduct of the offending spouse, the implied condition being that the guilty party shall in the future refrain from committing any matrimonial offense. See A. C. J. S., Divorce, § 59 *et seq.,* p. 193; 17 Am. Jur., Divorce and Separation, Section 223 *et seq.,* p. 410.

Plaintiff testified she left her husband because she was afraid to stay any longer. On the night before she left, plaintiff tried to discuss with defendant their marital difficulties. Defendant lost his temper and left the room. Plaintiff spent the night in her daughter's room and left the next morning.

In order to revoke or nullify the condonation and revise the original offense as a cause for divorce, the subsequent conduct must be of such nature as to lead other party to reasonably believe that the original offense will be repeated or that some other act constituting a ground of divorce will be committed. "No definition of such subsequent conduct is possible, but common sense and authority seem to require that it shall sink to the grade approaching a marital offense and partaking in at least a substantial degree of such an offense." *Currence v. Currence,* 123 W. Va. 599, 18 S. E. (2d) 656.

In our opinion that action of the defendant in losing his temper and leaving the room does not constitute such a circumstance as would justify an avoidance of the condonation.

For the foregoing reasons, we are of opinion that the Order appealed from should be affirmed; and it is so ordered. Affirmed.

Moss, Lewis, Bussey and Brailsford, JJ., concur.