19502

Margaret McG. DuBOSE, Respondent, v. Johnnie Leo DuBOSE, Jr., Appellant

(192 S. E. (2d) 329)

*Messrs. Ryan L. Scott* and *Frank K. Sloan,* of Columbia, *for Appellant,*

*Messrs. A. Frank Lever, Jr.,* of Lexington, and *Harry M. Lightsey, Jr.,* of Columbia, *for Respondent,*

October 18, 1972.

BUSSEY, Justice:

In this action the respondent wife was granted a divorce on the ground of adultery, primary custody of and support for the two children of the parties, and attorney's fees. The husband appeals, challenging all relief granted to the wife.

The parties were married on June 1, 1956, and separated finally on May 10, 1971. This action was commenced May 13, 1971, and the divorce decree was entered on December 7, 1971. Two sons of the marriage reached the respective ages of five and eleven during the summer of 1971.

Appellant's primary contention is that there was error in granting a divorce on the ground of adultery in that there was allegedly no evidence to establish any time or place of the alleged offense, with whom it was committed, or the circumstances thereof. He also asserts that there was insufficient corroborating evidence. We summarize the evidence in the light of these two contentions.

The husband's employment record seems to have been quite irregular. From March 1967 until January 1968 he worked for the Exchange Realty Company. In 1968 he went briefly into business for himself and then to work for Ben Arnold Company where he was working during 1969. In 1970 he worked for Atlantic Detective Agency for some five or six months. In May 1967 a female, whom we shall refer to simply as Sandra, went to work at Exchange Realty Company and became the secretary of the appellant husband. At substantially the same time, the husband left his wife and children for a period of about two and a half months,

leaving them in more or less destitute circumstances financially. His entire attitude toward his wife changed substantially, leading her to suspect his involvement with another woman.

During the brief period of time that Sandra was his secretary, he endorsed a note for her in the amount of $400.00. In either 1968 or 1969 he endorsed another note for Sandra to a finance company in the amount of $1,500.00, and along about the same time he gave Sandra his Master Charge Credit card for her personal use. The wife knew nothing of the first note endorsed for Sandra until the trial of the case, but learned of the fifteen hundred dollar note in January 1971 when she received a telephone call from the finance company thereabout. Naturally, she demanded an explanation of her husband, who insisted that he was not involved with Sandra, that he had simply tried to help her out because she was in financial straits, and that he had no other involvement with her or obligation on her account. She accepted his explanation and continued to live with him until May 10th, when a lawsuit was instituted against him for an account balance of some two thousand dollars incurred upon the Master Charge card given by the husband to Sandra for her personal use. Since this latter development the parties have not lived together.

Subsequent to the separation of the parties, the wife learned of the husband's involvement with a female, whom we refer to simply as Annette —————, and whom the husband admittedly met at Myrtle Beach during the summer of 1969 while traveling for Ben Arnold Company. A Mr. Hamer, with whom the husband worked in the summer of 1970, testified that the husband had told him of taking Annette to his room, and staying with her, at the Continental Motel at Myrtle Beach during the summer of 1969. Among other things, according to Mr. Hamer, the husband told him that Annette was in love with him and liked the type of underwear he wore. While the husband was working with Mr. Hamer, Annette called the husband by telephone on

more than one occasion, arranging with the husband rendezvous at one place or another. In response to a question on cross-examination, Mr. Hamer also testified that Annette herself told him of staying with the husband at the Continental Motel in Myrtle Beach.

After the separation of the parties the husband contacted both Mr. and Mrs. Hamer and asked to visit them for the purpose of discussing his relationship with his wife. As a result, Mrs. Hamer talked with him in detail, in person, and additionally talked to him on the phone on several occasions. He wanted Mrs. Hamer to talk to his wife in his behalf. In the course of these conversations Mrs. Hamer discussed with the husband at some length his relationship with Annette. Among other things, he told Mrs. Hamer that Annette was still in love with him and was still trying to have an affair with him. He neither admitted nor denied his adulterous relationship with Annette, telling Mrs. Hamer, according to her testimony, that he had been advised "not to admit anything". In this connection there is also evidence to the effect that he told his wife that he would confess everything if she would consent to take him back.

The husband called no witness, relying solely on his own testimony. He denied having committed adultery with either Sandra or Annette. He admitted endorsing the notes for Sandra and giving her the credit card for her use, and also admitted personally making some payments on these obligations but testified that he did so to protect his credit. He claimed that many of the items charged against the Master Charge account were not obtained by Sandra, and that the card had been stolen from her. While he denied committing adultery with Annette and denied having admitted such to Mr. Hamer, he did not refute many of the details brought out in the testimony of both Mr. and Mrs. Hamer showing a continuing, friendly relationship on his part with the said Annette over a period of some two years.

The foregoing is only a summary of the highlights of the evidence upon which the lower court concluded,

"The entire testimony taken as a whole leads me to only one conclusion and that is that the husband is guilty of adultery * * *."

We have omitted to recite many details which while not necessarily significant in themselves, tend to support the conclusion reached by the lower court.

In *Lee v. Lee,* 237 S. C. 532, 118 S. E. (2d) 171, we had occasion to point out,

"This action is one in equity. Section 20-105 of the 1952 Code. Our duty in equity cases to review challenged findings of fact does not require that we disregard the findings below or that we ignore the fact that the trial Judge, who saw and heard the witnesses, was in better position than we are to evaluate their credibility; nor does it relieve the appellant of the burden of convincing this Court that the trial Judge erred in his findings of fact. *Inabinet v. Inabinet,* 236 S. C. 52, 113 S. E. (2d) 66. In the instant case, the trial Judge saw the witnesses, heard the testimony delivered from the stand, and had the benefit of that personal observance of and contact with the parties which is of peculiar value in arriving at a correct result in a case of this character."

It is, of course, true that where a divorce is sought on the ground of adultery the infidelity must be established by a clear preponderance of the evidence, and, as a general rule, the proof must be sufficiently definite to identify the time and place of the offense and the circumstances under which it was committed. Insufficiency in this respect, however, should not be allowed to defeat a divorce where the Court is fully convinced that adultery has, in fact, been committed and the defendant has had full opportunity to defend against or refute the charge. For instance, proof of precise times and places might be exceedingly difficult for an innocent spouse who was unaware of otherwise clearly proved adulterous conduct until long afterward. To quote again from *Lee v. Lee, supra,*

"A 'preponderance of the evidence' stated in simple language is that evidence which convinces as to its truth."

We are convinced that the evidence was quite sufficient to prove the charge of adultery, including approximate times, places and the circumstances of such adultery, at least with Annette, if not with Sandra. And as to Sandra, there is at least strong circumstantial evidence of guilt.

The husband's contention that the divorce should have been denied for lack of corroborating evidence is without merit under the principles enunciated in *Frazier v. Frazier,* 228 S. C. 149, 89 S. E. (2d) 225, and *McLaughlin v. Mc-Laughlin,* 244 S. C. 265, 136 S. E. (2d) 537.

The wife was awarded primary custody of the two children but with the right of weekly visitation to the husband from 7:30 A. M. until 5 P. M. on each Saturday, except for legal holidays. Additionally, on each third Saturday the husband was allowed to keep the children until 5 P. M. of the following day. He was ordered to pay the wife support for the children in the amount of $50.00 per week. The husband's challenge to these provisions of the decree as to custody and support are clearly without any merit. A careful review of the evidence discloses no abuse of discretion on the part of the lower court in this respect, amounting to an error of law.

Lastly, the husband challenges the award of an attorney's fee for his wife, but both exceptions raising this question are predicated on the contention that the wife was not entitled to a divorce and for that reason not entitled to attorney's fees. Accordingly, the affirmance of the decree of divorce disposes of this last issue adversely to the husband.

For the foregoing reasons, the judgment of the lower court is

Affirmed.

Moss, C. J., and Lewis and Brailsford, JJ., concur.

Littlejohn, J., dissents.

LITTLEJOHN, Justice (dissenting):

I respectfully dissent and would reverse the judgment of the lower court to the extent that it found the husband guilty of adultery.

In *Odom v. Odom,* 248 S. C. 144, 149 S. E. (2d) 353 (1966), we discussed the requirements of proof in adultery cases:

"The proof of adultery as a ground for divorce must be clear and positive and the infidelity must be established by a clear preponderance of the evidence. The proof must be sufficiently definite to identify *the time and place* of the offense, and the *circumstances* under which it was committed. It is not necessary that the fact of adultery be proved by direct evidence, but it may be sufficiently proved by indirect or circumstantial evidence, or it may be proved by evidence consisting in part of both, however, if after due consideration of all the evidence proof of guilt is inconclusive, a divorce will be denied." (Emphasis added.)

The complaint alleges that the husband "was having then and still is having an adulterous affair with said woman." The woman is not named but is referred to as a business acquaintance. The evidence establishes beyond question that the woman referred to was Sandra. The time, place and circumstances of the adulterous conduct are not alleged. Some evidence was presented relative to improper conduct with Annette.

The trial judge does not find the husband guilty of adultery with either Annette or Sandra, but says, "The entire testimony taken as a whole leads me to only one conclusion and that is that the Respondent-husband is guilty of adultery and that the Petitioner-wife is entitled to a divorce *a vinculo matrimonii.*"

We have the unusual situation of the plaintiff alleging adultery by her husband with Sandra, who was identified by inference. The proof is aimed at both Sandra and An-

nette. The lower court finds the husband guilty of adulterous conduct in general. The majority opinion tacitly admits the charge of adultery with Sandra is not sufficiently proved, and holds that the circumstantial evidence submitted is sufficient to prove adultery with Annette, who was not even inferentially mentioned in the complaint.

The majority opinion weakens the rule set forth in *Odom, supra.* It alludes to the necessity of proof sufficiently definite to identify the time and place of the offense and the circumstances under which it was committed. The impact of the established rule is then lessened by stating:

"Insufficiency in this respect, however, should not be allowed to defeat a divorce where the Court is fully convinced that adultery has, in fact, been committed and the defendant has had full opportunity to defend against or refute the charge."

In the light of the *Odom* requirements, it is not sufficient to say that approximate times, places and circumstances have been proved. In actuality, an adulterous act has not been proved either directly or circumstantially. Therefore, I would hold that the finding of the circuit judge does not warrant the conclusion that plaintiff's case has been proved by the "clear preponderance of the evidence." I would otherwise affirm the lower court.