481 S.E.2d 181

Darcy S. NEMETH, Respondent–Appellant,

v.

Joseph J. NEMETH, Jr., Appellant–Respondent.

No. 2616.

Court of Appeals of South Carolina.

Submitted Nov. 6, 1996.

Decided Jan. 13, 1997.

Rehearing Denied Feb. 21, 1997.

Paul E. Tinkler, of Wallace & Tinkler, Charleston, for appellant-respondent.

Mary B. Webb, North Charleston, for respondent-appellant.

PER CURIAM:

Darcy Nemeth (the Wife) was granted a divorce from Joseph Nemeth (the Husband) on the ground of one year's continuous separation. Both parties appeal, challenging various aspects of the family court's final order. We affirm in part, modify in part, and reverse in part.

## I.  The Husband's Appeal

### A.  Alimony

Despite the Husband's contention that the Wife committed adultery, the family court awarded the Wife $400 per month permanent periodic alimony. In its original order, the family court concluded it was unnecessary to determine whether the Wife committed adultery because the Husband condoned any adultery. The Husband filed a motion for reconsideration, arguing, *inter alia*, that the family court improperly considered the issue of condonation because it was not pleaded by the Wife. The family court granted the Husband's motion in part. As to its findings concerning the Wife's adultery, the family court found the Husband failed to establish the Wife's adultery. The family court concluded that, while the Wife had the opportunity to commit adultery, she did not have the inclination to commit adultery. Accordingly, the court contends the family court erred in awarding alimony to the Wife, because he presented sufficient evidence establishing the Wife's adultery. We agree.

■ To obtain a divorce on the ground of adultery, the evidence establishing the adultery "must be clear and positive, and the infidelity must be established by a clear preponderance of the evidence. The proof must be sufficiently definite to identify the time and place of the offense, and the circumstances under which it was committed." *Brown v. Brown*, 215 S.C. 502, 512–13, 56 S.E.2d 330, 335 (1949). However, because adultery is an activity that takes place in private, the proof may be, and in fact generally will be, circumstantial. *McLaurin v. McLaurin*, 294 S.C. 132, 363 S.E.2d 110 (Ct.App.1987); *Loftis v. Loftis*, 284 S.C. 216, 325 S.E.2d 73 (Ct.App.1985). Circumstantial evidence showing the opportunity and inclination to commit adultery is sufficient to establish a *prima facie* case. *Panhorst v. Panhorst*, 301 S.C. 100, 102, 390 S.E.2d 376, 377 (Ct.App.1990).

■ The evidence concerning the Wife's adultery is as follows. Patricia Phipps, one of the Wife's co-workers at Restorative Dentistry, testified that in August 1991, the employees of the office, including the Wife, took a cruise to Alaska. Cecil Gooding, a long-time patient of Restorative Dentistry, also went on the cruise. Initially, the Wife was to share a cabin with Debbi Stevenson, and Gooding was to share a cabin with Bob Graft. Approximately two months before the cruise, Debbi and Bob became engaged and wanted to share a cabin. To accomplish this, the Wife and Gooding agreed to share a cabin. According to Phipps, no other sleeping arrangements were available. If the Wife or Gooding had objected to sharing a cabin, they would have lost the entire fare for the cruise. At the end of the cruise, the Wife and Gooding also spent the night together, alone, in a hotel in Vancouver.

Phipps testified that while on the cruise, she never saw the Wife and Gooding hugging or kissing. She described the Wife and Gooding as "good friends," and stated they did not appear to be "lovie-dovie." However, Phipps testified that before leaving on the cruise, the Wife told her "she wanted to have sexual relations with Cecil, [but] she could not do it because of her physical problems." The Wife later told Phipps that she and Gooding "didn't see each other anymore." Virginia Floyd, a friend of the Wife, testified she had seen the Wife and Gooding together on social occasions, on a "date." Floyd

further testified that she was later told by the Wife and Gooding that they had "stopped seeing each other."

The Husband testified that the Wife confessed to him that she had had an affair with Gooding. In addition, one of the parties' children testified that the Wife "was going with" Gooding and described Gooding as the Wife's boyfriend. The Wife admitted that she shared a cabin with Gooding on the cruise and that she spent the night with him in Vancouver. However, she testified that she and Gooding were just friends, and she denied ever committing adultery with Gooding.

The Wife presented evidence establishing that she had a history of vestibulitis vulvodynia, which results in chronic pain in the vaginal area, and dyspareunia, which means painful intercourse. As a result of these problems, the Wife saw a doctor in September 1990, June 1991, February 1992, April 1992, May 1992, June 1992, August 1992, September 1992, and October 1992. On September 20, 1993, approximately one month after receiving the Husband's answer and counterclaim alleging that she had committed adultery, the Wife returned to her doctor. Noting that the Wife's vestibulitis was "so bad that any manipulation of the area creates marked symptoms," the doctor found the Wife's condition to be "totally incapacitating from a sexual standpoint."

As the family court found in its modified order, the Wife clearly had the opportunity to commit adultery with Gooding during the Alaska cruise. Although there may be an innocent explanation for the sleeping arrangements aboard the cruise ship, the Wife offered no such explanation for the night she spent with Gooding in a hotel in Vancouver. In addition, the testimony of Patricia Phipps, which was elicited by the Wife's attorney, clearly established that the Wife also had the inclination to commit adultery with Gooding. Therefore, based on our own view of the preponderance of the evidence, we conclude the Husband made a *prima facie* showing of adultery by the Wife through clear evidence of the Wife's opportunity and inclination to commit adultery.[1]

---

1. In family court actions, this Court has jurisdiction to find facts in accordance with our view of the preponderance of the evidence. *E.g.*, *Epperly v. Epperly*, 312 S.C. 411, 414, 440 S.E.2d 884, 886 (1994); *Hough v. Hough*, 312 S.C. 344, 351, 440 S.E.2d 387, 391 (Ct.App.1994).

█ We do not believe the Wife's denial of adultery or her medical evidence is sufficient to rebut the inference of adultery. While the medical evidence may establish that the Wife has significant physical problems, it does not establish that she was totally incapacitated at the time of the Alaska trip. Moreover, even if the Wife's physical problems were so severe as to prevent her from engaging in sexual intercourse, to allow this evidence to rebut the inference of adultery largely requires the Court to equate adultery with intercourse, an argument that has been rejected in South Carolina. *See RGM v. DEM*, 306 S.C. 145, 149, 410 S.E.2d 564, 567 (1991) ("[H]omosexual activity between persons, at least one of whom is married to someone other than the sexual partner, constitutes adultery."); *Panhorst*, 301 S.C. at 104, 390 S.E.2d at 378 (rejecting argument that evidence of paramour's impotence would have rebutted inference of adultery: "We need not decide exactly what sex acts do and do not constitute adultery. Suffice it to say that where, as here, a married woman, with a history of having committed adultery, spends the night, undressed, in the same bed with a man, with whom it appears she is romantically involved and to whom she is not married, her actions warrant the finding that she has committed adultery."). Considering the Wife's stated desire to engage in sexual relations with Gooding, the week they spent together aboard the cruise ship, and the unexplained night in the Vancouver hotel, this Court is convinced that the relationship between the Wife and Gooding was sexually intimate, thus compelling a finding that the Wife committed adultery.

█ Given the conclusion that the Wife committed adultery, this Court has no choice but to reverse the award of alimony to the Wife. *See* S.C.Code Ann. § 20–3–130 (Supp.1995) ("No alimony may be awarded a spouse who commits adultery before the earliest of these two events: (1) the formal signing of a written property or marital settlement agreement or (2) entry of a permanent order of separate maintenance and

---

This Court generally is hesitant to disregard the findings of the family court judge, who saw and heard the witnesses and who was in a better position to evaluate their credibility. *Cherry v. Thomasson*, 276 S.C. 524, 280 S.E.2d 541 (1981); *Pool v. Pool*, 321 S.C. 84, 467 S.E.2d 753 (Ct.App.1996). Nonetheless, in this case, this Court simply cannot ignore the clear and convincing evidence of the Wife's adultery.

support or of a permanent order approving a property or marital settlement agreement between the parties."). It may well be that the Husband's actions, particularly his many adulterous affairs, were the cause of the breakdown of this marriage.[2] Nonetheless, this Court must enforce section 20-3-130 as written, without regard to how this Court might have viewed the equities between the parties in the absence of the statute. Accordingly, because the Wife is statutorily barred from receiving alimony, the family court's award of alimony is reversed.[3]

## B. Condonation

As noted above, the family court first ruled that any adultery by the Wife had been condoned by the Husband. However, the court modified its order, removing any discussion of condonation, and concluding that the Husband failed to prove adultery. Apparently as a precautionary measure, the Husband appeals the finding of condonation, in the event it remains an issue in the case. The Husband contends that any finding of condonation would be improper because condonation is an affirmative defense that must be pleaded. *See* Rule 8(c), SCRCP. In addition, the Husband argues that a finding of condonation cannot be supported by the evidence in this case.

The Wife states in her brief that condonation is no longer an issue after the family court's modified order. Nonetheless, she also argues, apparently as a sort of additional sustaining ground, that although it was not pleaded, condonation was an issue throughout the trial and, therefore, was tried by consent. The Wife does not, however, respond to the Husband's argument that a finding of condonation is unsupported by the facts of this case.

---

**2.** The Husband admitted to engaging in a number of affairs during the course of the marriage. In fact, in his brief, the Husband's attorney states that if the Husband were "accused of being a rogue, he would plead guilty." Clearly, the Husband's conduct would have supported a divorce on the grounds of adultery had the family court chosen to so find.

**3.** This ruling moots the Wife's claim that the amount of alimony awarded was insufficient.

■ As a defense in a divorce action, condonation means "forgiveness, express or implied, by one spouse for a breach of marital duty by the other. More specifically, it is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated, and that the offender shall thereafter treat the forgiving party with conjugal kindness." *McLaughlin v. McLaughlin*, 244 S.C. 265, 136 S.E.2d 537 (1964). To establish condonation, there generally must be proof of reconciliation, "which implies normal cohabitation of the husband and wife in the family home." *Langston v. Langston*, 250 S.C. 363, 373, 157 S.E.2d 858, 863 (1967).

In this case, the record establishes that the Husband did spend two nights (Christmas Eve and Christmas Day) in the home after he contends the Wife confessed her adultery to him. However, the Wife testified that the parties did not sleep together on those two nights, and, as to a possible reconciliation, that the Husband stated, "[L]et me think about this. I don't know what I want to do." The Husband also testified that they did not sleep together and that there was no agreement to reconcile. Therefore, assuming without deciding that condonation was properly in the case, the evidence is simply insufficient to support a defense of condonation.

### C. Retirement Plan

■ Finally, the Husband challenges the family court's requirement that he purchase the survivor's benefit option offered by his retirement plan, the cost of which the court ordered to be borne equally by the parties. We find no error.

As part of its distribution of the marital assets, the family court awarded the Wife fifty percent of the Husband's retirement plan as of December 26, 1991, the date of separation as determined by the family court. It appears from the record that, absent election of the survivor's benefit, the Wife would not receive the cash value of the Husband's retirement fund upon his death, thus distorting the family court's intended distribution of the marital estate. Accordingly, we find no error in the requirement that the Husband purchase the

survivor's benefit option.[4] *See Murphy v. Murphy*, 319 S.C. 324, 327–31, 461 S.E.2d 39, 41–42 (1995) ("Family court judges have wide discretion in determining how marital property is to be distributed. They may use any reasonable means to divide the property equitably, and their judgment will not be disturbed absent an abuse of discretion.").

## II. The Wife's Appeal

### A. College Expenses

■ The Wife first argues that the family court erred in ordering that the college expenses of the parties' children be split equally by the Husband and the Wife. The Wife contends that the expenses should be paid on a pro rata basis, according to the income of each party. We disagree.

Prior to trial, the parties were, by agreement, sharing college expenses equally. Although the Wife requested that a pro rata division of the expenses be ordered, we conclude that the family court did not abuse its discretion by maintaining the division to which the parties had previously agreed. *See, e.g., Kirsch v. Kirsch*, 299 S.C. 201, 206–06, 383 S.E.2d 254, 257 (Ct.App.1989) (Award of college expenses is a form of child support); *Bull v. Smith*, 299 S.C. 123, 125, 382 S.E.2d 905, 906 (1989) (Child support awards are addressed to the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion).

### B. Retirement Plan

■ This action was commenced by the Wife on July 14, 1993. As discussed above, the family court awarded the Wife a fifty percent interest in the Husband's retirement plan as of December 26, 1991, the date the family court identified as the separation date. The Wife contends the family court erred by denying her any interest in the portion of the retirement plan accumulating between December 26, 1991, and July 14, 1993, the date of the commencement of this action. We agree.

Marital property should be valued as of the date that marital litigation is commenced. *See* S.C.Code Ann. § 20–7–

---

**4.** We note that the Husband does *not* argue that the Wife should be required to bear the full cost of the survivor's benefit option in view of the fact that the option inures solely to the Wife's benefit.

473 (Supp.1995); *Smith v. Smith,* 294 S.C. 194, 363 S.E.2d 404 (Ct.App.1987). Here, the parties separated in 1988, when the Husband bought a condominium and moved out of the marital home. While there were numerous attempts at reconciliation between 1988 and 1991, the Husband retained his condominium and never returned permanently to the marital home. Given this history, we can discern no reason to treat the separation between December 1991 and July 1993 any differently than the prior period of separation. Therefore, under the circumstances of this case, we conclude the family court erred by valuing the retirement plan as of a date other than the filing date. *Smith,* 294 S.C. at 203, 363 S.E.2d at 409 (both parties entitled to any appreciation in marital assets that occurs after the parties separate and before the parties divorce); *cf. Wannamaker v. Wannamaker,* 305 S.C. 36, 406 S.E.2d 180 (Ct.App.1991) (where the parties separated in 1977 but were not divorced until 1988, the family court erred in awarding the wife an interest in the husband's medical partnership he established eight years after the separation). Accordingly, the family court's order is hereby modified to give the Wife a fifty percent interest in the Husband's retirement plan as of July 14, 1993, the date this action was commenced.[5]

## C. Attorneys' Fees

Finally, the Wife contends the family court erred in refusing to award her attorney's fees. We disagree.

In determining whether to award attorney's fees, the court should consider each party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' financial conditions, and the effect of the attorney's fee on each party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 415 S.E.2d 812 (1992); *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991). In determining the amount of attorney's fees to award, the court should consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, the professional standing of counsel, the contingency of compensation, and the beneficial results obtained. *Nienow v. Nienow,* 268 S.C. 161, 232 S.E.2d 504

---

5. The parties apparently agreed that the value of the pension fund as of the filing date was approximately $69,000.00.

(1977); *Rish v. Rish,* 296 S.C. 14, 370 S.E.2d 102 (Ct.App. 1988).

An award of attorney's fees rests within the sound discretion of the family court and should not be disturbed on appeal absent an abuse of discretion. *Ariail v. Ariail,* 295 S.C. 486, 369 S.E.2d 146 (Ct.App.1988). We cannot conclude that the family court abused its discretion by denying fees to the Wife, particularly in light of our conclusion that the Wife committed adultery and is therefore prohibited from receiving alimony.

Accordingly, for the foregoing reasons, the appealed order is hereby

**AFFIRMED IN PART, MODIFIED IN PART, and REVERSED IN PART.**

HOWELL, C.J., and HUFF and HOWARD, JJ., concur.