665 S.E.2d 174

Thomas Lee BROWN, Appellant,

v.

Gina Marie (Stiles) BROWN, Respondent,

and

Gina Marie (Stiles) Brown, Third Party Plaintiff,

v.

Myron L. Brown & Carol J. Brown, Third Party Defendants.

No. 4397.

Court of Appeals of South Carolina.

Submitted March 1, 2008.

Decided May 28, 2008.

Rehearing Denied Aug. 25, 2008.

272

Oscar W. Bannister, of Greenville, for appellant.

Kenneth C. Porter, of Greenville, for respondent.

PER CURIAM.

In this divorce action, Thomas Lee Brown (Husband) appeals the family court's failure to find Gina Marie Brown (Wife) committed adultery, thus barring her from receiving alimony. Additionally, Husband appeals the family court's inclusion of certain items as marital property and the assessment of Wife's attorney's fees against him. We affirm in part, reverse in part, and remand.

## FACTS

Husband and Wife (collectively the Browns) married in Ohio on November 27, 1982. They had five children together during their marriage. In 1985, the Browns moved to Greenville, South Carolina. In 1989, Husband purchased a house with several acres of property in Travelers Rest, South Carolina, but the Browns continued to reside in a house they were renting in Greenville, South Carolina. In 1995, Husband and Wife built a new home on the property in Traveler's Rest where they resided throughout the remainder of the marriage.

Chris Craft (Craft) sold and installed the windows in the Browns' new home. A few months later, Craft and his wife began socializing with the Browns. Around Christmas of 1996, Husband took the children to church while Wife remained at home with their baby. Husband returned home and unexpectedly discovered Craft there. In explaining Craft's presence, Wife told Husband Craft had stopped by to look at their Christmas lights.

Wife and Craft became close and began having lunch without either of their spouse's knowledge. On several occasions, Craft and Wife met in a remote part of a restaurant's parking lot and fondled each other in Wife's car. In 1998, Husband discovered Craft and Wife were having lunch together. After confronting Wife, she temporarily ceased contact with Craft but admitted to subsequently resuming their relationship. Additionally, Craft and Wife frequently talked on the phone. In late 2000, Husband discovered Wife had a cell phone for which she had the bill sent to her mother's address, and Husband testified Wife had called Craft several dozen times from Wife's cell phone.

Wife admitted her relationship with Craft was sexual in nature. Over the course of their relationship, Wife admitted to kissing Craft "a couple of dozen times," permitting him to grope her breasts, and allowing him to fondle her genital area. Wife stated she was in love with Craft and discussed marriage with him. Furthermore, Wife agreed her relationship with Craft was "sexual to a degree," and while not admitting to engaging in sexual intercourse, she stated both she and Craft desired sex with each other.

On November 14, 2000, Husband filed for divorce on the grounds of adultery. However, the action was administratively dismissed, and Husband filed a new action in 2002. Thereafter, Wife filed an answer denying she committed adultery and a third-party complaint against Husband's parents. Wife alleged Husband's parents were necessary parties to the divorce action because Husband and his parents had "common financial interests," and Wife believed they might claim an interest in a house in Husband's name as well as property surrounding the marital residence. Pursuant to a consent order, Wife's action against Husband's parents was consolidated with the divorce action.[1]

Following a hearing on the matter, the family court found Wife had not committed adultery, but her behavior with Craft did not aid in the preservation of the marriage. The family court further found Husband's predilection towards online pornography did not aid in the preservation of the marriage.

Finding Wife had never worked, the family court awarded Wife alimony of $3,197 per month. The family court found Husband's net monthly income was $6,136.48 with an annual earning capacity of $150,000. The family court also noted Husband's ability to make several personal expenditures, such as buying two expensive motorcycles and flying lessons, while he was paying temporary unallocated support of $5,000 a month.

The parties agreed Wife would retain custody of the minor children. The family court awarded Wife child support of $1,743 per month. The family court equally divided the marital property, awarding each party approximately half the value of the marital estate.

Furthermore, the family court ordered Husband to pay a total of $58,895.76 in Wife's attorney's fees, which included $27,000 previously paid pursuant to a temporary order and $3,000 previously paid to Wife during the pendency of the action. The family court also ordered Husband pay $5,006.50

---

1. Following the final hearing, the family court found Husband's parents had no interest in the house. Husband's parents appealed this decision and the family court's assessment of attorney's fees against them in a separate appeal. *Brown v. Brown*, Op. No.2008–UP–051 (S.C. Ct.App. filed Jan. 14, 2008) (unpublished opinion).

of Wife's expert witness fee. Additionally, the family court ordered Husband's parents to pay $5,006.50 of Wife's expert witness fee and $5,000 of Wife's attorney's fees. This appeal follows.

## STANDARD OF REVIEW

On appeal from a family court order, this Court has authority to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence. *E.D.M. v. T.A.M.*, 307 S.C. 471, 473, 415 S.E.2d 812, 814 (1992). When reviewing decisions of the family court, we are cognizant of the fact the family court had the opportunity to see the witnesses, hear "the testimony delivered from the stand, and had the benefit of that personal observance of and contact with the parties which is of peculiar value in arriving at a correct result in a case of this character." *DuBose v. DuBose*, 259 S.C. 418, 423, 192 S.E.2d 329, 331 (1972). When the evidence is conflicting and susceptible of different inferences, the family court has the duty of determining not only the law of the case, but the facts as well, because it had the benefit of observing the witnesses and determining how much credence to give each witness's testimony. *Anders v. Anders*, 285 S.C. 512, 514, 331 S.E.2d 340, 341 (1985).

## LAW/ANALYSIS

### I. Adultery

Husband contends the family court erred in failing to find Wife committed adultery, and thus, Wife should be barred from receiving alimony. We agree.

A family court may not award alimony to a spouse who commits adultery before the earliest of (1) the formal signing of a written property or marital settlement agreement or (2) entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital settlement agreement between the parties. S.C.Code Ann. § 20–3–130(A) (Supp.2007).

Proof of adultery as a ground for divorce must be "clear and positive and the infidelity must be established by a clear preponderance of the evidence." *McLaurin v. McLau-*

*rin,* 294 S.C. 132, 133, 363 S.E.2d 110, 111 (Ct.App.1987). A "preponderance of the evidence" is evidence which convinces as to its truth. *DuBose,* 259 S.C. at 424, 192 S.E.2d at 331. Because of the "clandestine nature" of adultery, obtaining evidence of the commission of the act by the testimony of eyewitnesses is rarely possible, so direct evidence is not necessary to establish the charge. *Fulton v. Fulton,* 293 S.C. 146, 147, 359 S.E.2d 88, 88 (Ct.App.1987).

Accordingly, adultery may be proven by circumstantial evidence that establishes both a disposition to commit the offense and the opportunity to do so. *Hartley v. Hartley,* 292 S.C. 245, 246–47, 355 S.E.2d 869, 871 (Ct.App.1987). Generally, "proof must be sufficiently definite to identify the time and place of the offense and the circumstances under which it was committed." *Loftis v. Loftis,* 284 S.C. 216, 218, 325 S.E.2d 73, 74 (Ct.App.1985). Evidence placing a spouse and a third party together on several occasions, without more, does not warrant the conclusion the spouse committed adultery. *Fox v. Fox,* 277 S.C. 400, 402, 288 S.E.2d 390, 391 (1982).

Our courts have not specifically stated what sexual acts constitute adultery. *Panhorst v. Panhorst,* 301 S.C. 100, 104, 390 S.E.2d 376, 378 (Ct.App.1990). In *Nemeth v. Nemeth,* 325 S.C. 480, 486, 481 S.E.2d 181, 184 (Ct.App.1997), this Court noted South Carolina has rejected the argument equating adultery with intercourse. In *Nemeth,* the wife took a cruise and stayed in a cabin with a man other than her husband. *Id.* at 484, 481 S.E.2d at 183. The wife denied she committed adultery and introduced evidence she had chronic pain that made intercourse difficult for her. *Id.* at 485, 481 S.E.2d at 184. This Court found adultery, stating sexual intercourse is not required to establish adultery; sexual intimacy is enough. *Id.* at 486, 481 S.E.2d at 184.

Additionally, in *Panhorst,* the wife was accused of adultery and sought to testify her alleged paramour was impotent and thus was incapable of performing intercourse. 301 S.C. at 104, 390 S.E.2d at 378. This Court found "her assertion that she has first hand knowledge and experience of [her paramour's] sexual abilities, if the family court had considered it, would have supported the court's finding of adultery." *Id.*

In *McElveen v. McElveen,* 332 S.C. 583, 598, 506 S.E.2d 1, 8 (Ct.App.1998), this Court declined to find the wife committed adultery because "there [was] virtually no evidence of a romantic or sexual relationship between the [wife and her paramour]." This Court noted without evidence to support a romantic relationship, including love letters, romantic cards, hand-holding, hugging, kissing, or any other romantic demonstrations or actions between the wife and her paramour, adultery was not adequately established. *Id.*

This Court reiterated in *McLaurin,* 294 S.C. at 133–34, 363 S.E.2d at 111, that circumstantial evidence indicating opportunity and inclination is sufficient to sustain a finding of adultery. In *McLaurin,* we affirmed the family court's finding the husband committed adultery when the only evidence of adultery was the wife's testimony that her husband admitted committing adultery and a process server's statement that the divorce pleadings were served on the husband at the alleged paramour's residence where the paramour answered the door "comfortably clothed," but the husband came to the door fully dressed. *Id.* at 135, 363 S.E.2d at 112. Noting the husband's presence in the paramour's house without more was not enough to establish adultery, this Court found the incident was "some evidence that [the husband and his paramour] had the opportunity and disposition" to commit adultery. *Id.*

Husband has the burden of proving Wife committed adultery. *See McElveen,* 332 S.C. at 598, 506 S.E.2d at 8–9 ("[The] [h]usband bore the burden at trial, as he does on appeal, of convincing the court that [the] [w]ife committed adultery."). While Husband is not required to show direct evidence of the actual act, he must demonstrate Wife's inclination and opportunity to commit adultery. *Fulton,* 293 S.C. at 147, 359 S.E.2d at 88.

The family court determined Wife and Craft may have had the opportunity to commit adultery at two locations: (1) in the Browns' home around Christmas when Husband was at church and (2) in the car in a parking lot at lunchtime. Despite these apparent opportunities, the family court noted Wife's strict moral upbringing regarding sexual activity supported Wife's position that she and Craft had not had sexual intercourse.

We agree that Craft and Wife's presence in the Browns' home, without more, is not sufficient to establish adultery. *See Fox*, 277 S.C. at 402, 288 S.E.2d at 391 (finding evidence that a spouse and a third party were together on several occasions, without more, does not warrant a finding of adultery).

However, we disagree with the family court's finding that Wife and Craft's continued and secretive meetings in various parking lots did not provide sufficient evidence to establish an opportunity to commit adultery. The family court found Craft and Wife met approximately twenty-four times over a four to five year period. While the admitted meetings were during the daytime in a car parked in public parking lots, Wife's and Craft's admissions to the conduct that occurred while in the car are circumstantial evidence that adultery was committed.

Furthermore, Wife's and Craft's own admissions establish they were inclined to commit adultery. Craft testified the activities he and Wife engaged in were sexual in nature. Wife and Craft admitted that when they would meet for lunch, they would often kiss in Wife's car. Craft also touched Wife's breast and removed her bra. Both Wife and Craft touched one another below the waist, outside of their clothing. Wife also admitted Craft touched Wife "under her panties" once or twice. Additionally, Wife stated she was in love with Craft and that she discussed marriage with him. Further, she admitted their relationship was sexual to a degree, and she desired to have sexual intercourse with Craft.

Their admissions to meeting for one-on-one lunches, calling each other frequently, kissing, and fondling indicate a "romantic relationship" existed, which also supports a finding of adultery. Wife acknowledged she ceased talking to and seeing Craft for a period of time after Husband confronted her, showing Wife knew her actions were wrongful and inappropriate for a married woman. While we defer to the family court on issues of credibility, sufficient direct and overwhelmingly circumstantial evidence is present in the record to clearly prove Wife committed adultery. The evidence here of opportunity and inclination is too compelling to be brushed aside on the basis of Wife's "strict moral upbringing" and her claims

that the romantic rendezvous always stopped short of sexual intercourse.

Therefore, based on the evidence Husband presented, we hold Husband met his burden in proving Wife committed adultery. Accordingly, the family court erred in failing to find Wife committed adultery and consequently in awarding Wife alimony.

## II. Equitable Division

Husband contests several decisions of the family court regarding the distribution of the marital estate, specifically the assessment of the value of the parties' timeshare solely against Husband and the family court's determinations that a backhoe and a gun collection were marital property. We address each argument in turn.

 Marital property includes all real and personal property the parties acquired during the marriage and owned as of the date of filing or commencement of marital litigation. S.C.Code Ann. § 20–7–473 (Supp.2007). The ultimate goal of apportionment is to divide the marital estate, as a whole, in a manner which fairly reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of ending that partnership. *Johnson v. Johnson*, 296 S.C. 289, 298, 372 S.E.2d 107, 112 (Ct.App.1988). The division of marital property is within the family court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion. *Craig v. Craig*, 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005). The appellate court looks to the overall fairness of the apportionment. *Deidun v. Deidun*, 362 S.C. 47, 58, 606 S.E.2d 489, 495 (Ct.App.2004). "The doctrine of equitable distribution is based on a recognition that marriage is, among other things, an economic partnership." *Mallett v. Mallett*, 323 S.C. 141, 150, 473 S.E.2d 804, 810 (Ct.App.1996). "Upon dissolution of the marriage, property acquired during the marriage should be divided and distributed in a manner which fairly reflects each spouse's contribution to its acquisition, regardless of which spouse holds legal title." *Id.*

### A. Timeshare

 Husband argues the family court erred in assessing the entire value of the Hilton Head timeshare against him

because it found he was at fault in allowing the timeshare to go into default. We agree.

The Browns owned a Hilton Head timeshare valued at $27,500 at the commencement of the divorce proceedings. However, the timeshare had gone into default by the time of the divorce decree. The family court found no credible evidence of an outstanding mortgage and stated Husband allowed the "timeshare to go into default quite possibly for spite."

For purposes of equitable distribution, marital property is typically valued at the time of the commencement of the marital litigation. *Mallett v. Mallett*, 323 S.C. 141, 151, 473 S.E.2d 804, 810 (Ct.App.1996). Often, "the value of marital assets ... change, sometimes substantially, between the time the action was commenced and its final resolution." *Dixon v. Dixon*, 334 S.C. 222, 228, 512 S.E.2d 539, 542 (Ct.App.1999). "[B]oth parties are entitled to share in any appreciation or depreciation that occurs to marital property after separation but before divorce." *Arnal v. Arnal*, 363 S.C. 268, 293, 609 S.E.2d 821, 834 (Ct.App.2005). However, this Court has previously held when one party is at fault in causing the diminishment in value of the property, that depreciation may be assessed against the at-fault party. *Dixon*, 334 S.C. at 228, 512 S.E.2d at 542.

In the present case, both parties were at fault in the time share's diminishment in value. Both knew the payment was due and refused to pay. The temporary order was silent as to who was responsible for the payments. Either party could have sought the family court's assistance in determining which party should pay. Both Husband and Wife had the ability to pay because Wife was receiving temporary unspecified support at the time the payment was due. Accordingly, both were at fault in allowing the timeshare to fall into foreclose, and the family court erred in assessing the value of the timeshare solely against Husband instead of equally against both parties.

### B. Backhoe

Husband maintains the family court erred in including a John Deere backhoe as marital property and including it

in Husband's distribution because Husband's company actually owned the backhoe. We disagree.

■ The burden to show property is not subject to equitable distribution is upon the one claiming that property acquired during the marriage is not marital. *Brandi v. Brandi,* 302 S.C. 353, 356, 396 S.E.2d 124, 126 (Ct.App.1990). In the instant case, Husband failed to sustain his burden of proving the backhoe was non-marital property. While Husband claimed the backhoe belonged to his company, the receipt for the backhoe was in his name instead of the company's name. Further, the backhoe was not listed on the company's tax returns, and the company had not taken depreciation on the backhoe. Husband provided no documentation the backhoe belonged to the company, and the backhoe was even parked at the Browns' residence. Accordingly, the family court did not err in finding the backhoe constituted marital property. *See Pool v. Pool,* 321 S.C. 84, 89, 467 S.E.2d 753, 756–57 (Ct.App. 1996) (holding equipment purchased using marital funds that was listed on couple's joint tax return was marital property despite exclusive use at husband's business).

## C. Gun Collection

■ Husband contends the family court erred in finding Husband acquired guns during the marriage with a total value of $12,500 because Wife presented insufficient evidence to identify the guns, their value, and their marital character. We agree.

■ "[A] spouse claiming an equitable interest in property upon dissolution of the marriage has the burden of proving the property is part of the marital estate." *Carroll v. Carroll,* 309 S.C. 22, 26, 419 S.E.2d 801, 803 (Ct.App.1992).

Wife testified Husband owned ten or fourteen guns. She further testified Husband told her the entire collection of guns was worth approximately $15,000. On cross-examination, Wife could not name any of the guns but testified "there were a couple, though, that he had gotten after we were married." She further testified Husband received a collection of guns from his father before they married. Wife testified she did not know how much Husband paid for the guns bought during the marriage.

Wife had the burden of showing the guns were marital property. Her testimony was vague regarding how many guns Husband owned and acquired during the marriage and gave no indication of the value of the guns obtained during the marriage. She simply gave an estimate for the entire collection as told to her by Husband several years ago. We find this testimony alone is insufficient to establish Husband had acquired guns during the marriage or to specifically indicate their value. Accordingly, the family court erred in including Husband's gun collection in the marital estate.

### III. Attorney's Fees

Finally, Husband asserts the family court erred in ordering Husband to pay all of Wife's attorney's fees because Wife's conduct caused the fees to be excessive. In light of our decision to reverse the family court's finding on the adultery and equitable distribution issues, we similarly reverse the award of attorney's fees and remand the issue for reconsideration. *See Sexton v. Sexton*, 310 S.C. 501, 503, 427 S.E.2d 665, 666 (1993) (reversing and remanding issue of attorney's fees for reconsideration when the substantive results achieved by trial counsel were reversed on appeal).

### CONCLUSION

The family court erred in failing to find Wife committed adultery because Husband met his burden of proving Wife had both the inclination and the opportunity to commit adultery such that an award of alimony to Wife was improper. Further, the family court erred in assessing the value of the timeshare solely against Husband when both parties were equally at fault in allowing it to enter into default. Conversely, the family court did not err in determining the backhoe was marital property because the Husband failed to prove it was non-marital property. Further, the family court erred in classifying Husband's gun collection as marital property because Wife did not meet her burden in proving the guns were marital property. In light of these decisions, we modify the family court's distribution of the marital estate to be consistent with this opinion. Further, we reverse and remand the issue of attorney's fees against Husband for reconsideration. Therefore, the order of the family court is

AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.[2]

HUFF, KITTREDGE, and WILLIAMS, JJ., concur.

---

**2.** We decide this case without oral argument pursuant to Rule 215, SCACR.