0730

Phyllis J. CRIM, Appellant v. Reuben Sidney CRIM, Respondent.

(345 S. E. (2d) 515)

Court of Appeals

*Thomas E. McCutchen* and *T. English McCutchen, III,* both of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, for appellant.

*Jean H. Toal,* of *Belser, Baker, Barwick, Ravenel, Toal & Bender,* of Columbia; and *James E. Hunter,* West Columbia, for respondent.

Heard April 22, 1986.

Decided June 9, 1986.

GOOLSBY, Judge:

Phyllis J. Crim, the wife, appeals from the decree of the family court that granted her a divorce from the husband, Reuben S. Crim, on the ground of adultery, awarded her custody of the parties' two minor children, awarded her rehabilitative alimony for one year, awarded her child support, and equitably divided the marital property. The issues on appeal are whether the trial judge erred in awarding rehabilitative rather than permanent periodic alimony and whether the trial judge abused his discretion in equitably dividing the marital property. We reverse in part, affirm in part, and remand.

The parties married on January 14, 1963, when the wife was nineteen years old and the husband was twenty. At the time of their marriage, the wife had only an associate degree. The husband had not been to college but with the wife's support and encouragement, he attended college and received his bachelor's degree in 1967. While the husband was in college, the wife worked full-time.

Thereafter, in accordance with the parties' prior agreement, the wife returned to school and received her bach-

elor's degree also. It is clear from the record that both parties worked and contributed to their own and to each other's education.

In 1968, the husband went to work for Columbia Newspapers as Personnel Director. The parties' first child, Berry W. Crim, was born that same year. Following Berry's birth, the wife remained home and out of the work force for a year and a half.

The wife, who possesses a teacher's certificate, engaged in full-time teaching for ten weeks in the fall of 1970.

In 1970, the husband took a job with a newspaper in Charleston, West Virginia, and moved the family to Charleston. They lived there for the next six years. Their daughter, Jordan B. Crim, was born in Charleston two years later.

The Crims moved to Beckley, West Virginia, in 1976, where the husband worked with a local newspaper for five years. In 1981, they returned to Columbia where the husband was employed as General Manager and Executive Vice President of Columbia Newspapers.

During their years in West Virginia, the wife occasionally worked as a substitute teacher but she never received any substantial income from teaching. She did, however, maintain a current teaching certificate and is presently certified to teach in elementary schools and to teach business subjects in high school.

Corresponding increases in salary have marked the husband's move up in the newspaper business. At the time of the hearing, his salary exceeded $96,000 a year. He also was receiving many benefits, such as club memberships, a company car, insurance, and stock offerings.

The parties separated in July, 1983, after more than twenty years of marriage. The husband admitted to having an affair with another woman after the date of the separation but strongly denied that his affair caused the breakup of the marriage. Instead, he claimed that the wife withdrew all emotional support from him after they returned to Columbia and that she often embarrassed him in public and in front of business colleagues. Several witnesses corroborated these facts at the trial.

The wife testified that the problems in the marriage began when the husband started staying out after work with

business associates, became inattentive to her, and generally excluded her from his life.

The parties lived comfortably during their marriage. They travelled to places like Newfoundland, Arizona, Florida, and the Bahamas. The parties lived in expensive homes in West Virginia and in Columbia. One or both of the children took tennis lessons, piano lessons, ballet lessons and played golf. They were members of a country club and another private club.

The trial judge granted the wife a divorce on the ground of adultery but found that "[n]either party was faultless in the deterioration and breakup of the marriage." The judge granted custody of the two children to the wife and ordered the husband to pay $750 per month per child in child support. The trial judge further ordered the husband to pay to the wife $1,000 per month in rehabilitative alimony for a period of one year based upon his finding that the wife "is capable of earning gainful income for her own self-support . . . ."

The trial judge's order permits the wife to live in the marital home, which is jointly owned by the parties, for a period of one year from the date of the decree and directs the husband to make the monthly house payments for that period. At the end of the year, either the parties may sell the residence with the net proceeds to go to the wife or the husband may convey his one-half interest in the property to the wife, in which case the wife would be responsible for the house payments.

The trial judge divided the remaining property of the parties, including the contents of the marital home. He awarded 60% of the contents to the wife and 40% thereof to the husband. Exclusive of the contents, the wife received by way of equitable distribution assets worth $75,150 while the husband got assets worth $65,535.

## I.

The wife contends the trial judge erred in awarding her rehabilitative alimony. She seeks permanent periodic alimony in terms of money and other forms of support, such as house payments, insurance on the husband's life, and country club dues.

The South Carolina Supreme Court recognized rehabilitative alimony in *Herring v. Herring*, 286 S. C. 447, 335 S. E. (2d) 366 (1985); *see also Eagerton v. Eagerton*, 285 S. C. 279, 328 S. E. (2d) 912 (Ct. App. 1985). Factors to be considered in awarding rehabilitative alimony include (1) the duration of the marriage, (2) the age, health, and educational background of the supported spouse, (3) the financial resources of the parties, (4) the parties' accustomed standards of living, (5) the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance, (6) the time necessary for the dependent spouse to acquire job skills, and (7) the likelihood of success in the job market. *Alliegro v. Alliegro*, 287 S. C. 154, 337 S. E. (2d) 252 (Ct. App. 1985).

This case is clearly a close one. Although the marriage was lengthy, the wife, at 43, is still relatively young and healthy. She is highly educated and already possessed of the skills, if not the experience, necessary to find a job as a teacher.

On the other hand, the husband has a yearly salary approaching $100,000 and has provided his wife and family with a high standard of living. He has the ability to contribute to the continuation of that living standard.

The trial judge based his award of rehabilitative alimony upon his finding that the wife, although then unemployed, was nonetheless capable of earning a livelihood. We likewise think she is capable of obtaining a job and contributing to her own support and to the support of her family. It is unlikely, however, that the wife will ever match her former husband in earning capacity and that on her own she can ever achieve the high standard of living to which she and her children were accustomed during the marriage. To think she might do so, we believe, would deny reality.

We therefore reverse the award of rehabilitative alimony and direct that permanent periodic alimony be awarded to the wife in an amount to be determined by the trial court on remand. *Voelker v. Hillock*, 344 S. E. (2d) 177 (S. C. Ct. App. 1986). In determining this amount, the trial court shall consider the appropriate factors outlined in *Atkinson v. Atkinson*, 279 S. C. 454, 309 S. E. (2d) 14 (Ct. App. 1983), and

other recent cases. The trial court shall also reconsider awarding the wife the other features of support sought by her in light of our decision that she is entitled to permanent periodic alimony in some amount and our decision regarding equitable distribution. The amount of alimony and the nature of any additional support to be awarded to the wife are matters we commit to the trial court's sound discretion. *Cf. Smith v. Smith*, 264 S. C. 624, 216 S. E. (2d) 541 (1975) (the amount of alimony to be awarded is a matter within the discretion of the trial court).

In awarding the wife permanent periodic alimony rather than rehabilitative alimony, we deem appropriate the language used by the Florida Court of Appeals in a recent case wherein that court reversed an award of rehabilitative alimony and modified an award of permanent periodic alimony by increasing the amount therefor:

> By so ruling, we do not intend to lend support to the thought that a middle aged healthy woman need not go out to work. In our society, today, women, more often than not, are required to work until retirement and there is no reason to excuse [the wife] from doing the same just because her former position allowed her to follow a more traditional role. On the other hand, it must be remembered that at her age and level of earning experience, [the wife] is unlikely to become a great financial success story, and in all probability she will not achieve other than a very modest income.

> Accordingly, mere rehabilitative alimony is not enough; however, the award of reasonable permanent periodic alimony does not forever enslave the husband, because significantly changed circumstances, either his or hers, are well settled in the law as a basis for later modification thereof.

*McAllister v. McAllister*, 345 So. (2d) 352 (Fla. 4th Dist. Ct. App. 1977), *cert. denied*, 357 So. (2d) 186 (Fla. 1978).

## II.

The wife next argues the trial court erred in its equitable division of the marital estate. We disagree.

The criteria for equitable distribution set forth in the

recent case of *Shaluly v. Shaluly*, 284 S. C. 71, 325 S. E. (2d) 66 (1985) were considered by the trial court. Considering the record as a whole, we find no abuse of discretion in this award, particularly as to the valuation of the house contents and as to the method of distribution, the only aspects of the trial court's equitable division of the marital estate to which the wife objects on appeal. *See Millis v. Millis*, 282 S. C. 610, 320 S. E. (2d) 66 (Ct. App. 1984).

Reversed in part, affirmed in part, and remanded.

CURETON, J., concurs.

GARDNER, J., dissents.

GARDNER, Judge:

I dissent. The wife in this case devoted her career-building years to the marriage and the rearing of the parties' children. Obtaining employment at age 43 will be difficult, to say the least, for a woman who has been out of the job market for most of her adult life. The wife of this case sent her husband through college. He now earns more than $96,000 per year. I would modify the appealed order by awarding the wife $3,000 per month permanent alimony. Although this would not equalize the income of the parties, it would afford credence to the obligation of the Court to award alimony in keeping with the standard of living the wife has become accustomed to.

I, as a judge, cannot endorse the proposition that wives of a long marriage who have devoted their career-building years to the marriage and the rearing of the children are not entitled to equitable treatment in divorces brought about by the husband's adultery in the September of their lives. Statistics bear out the fact that in divorces wives are impoverished and husbands are enriched — equity should not condone this statistically proven fact.

I would affirm with the suggested modification.