481 S.E.2d 174

**Doris N. BELTON, Appellant,**

v.

**Mondell BELTON, Respondent.**

**No. 2613.**

Court of Appeals of South Carolina.

Submitted Oct. 8, 1996.

Decided Jan. 13, 1997.

Rehearing Denied Feb. 21, 1997.

Kenneth M. Mathews, Columbia, for appellant.

Clinch H. Belser, Jr., Columbia, for respondent.

HOWELL, Chief Judge:

Doris Belton (Wife) appeals from a Family Court decree which in pertinent part, awarded her rehabilitative alimony, valued and divided Mondell Belton's (Husband) three retirement plans, and divided certain home furnishings. We affirm in part, reverse in part, and remand.

## I.

The parties were married in July 1968 and had one child who was emancipated by the time of Wife's filing in July 1992. Both are in their mid-forties, enjoy relatively good health, and have high school educations. Husband did not answer the complaint, and Wife was granted a divorce on the grounds of adultery. However, the court specifically found "there were a

number of causes of the breakup of the marriage, including the conduct of the wife."

Husband worked at E.I. DuPont for the entire marriage. At the time of the hearing, he had a monthly gross income of $3,200.00 and expenses of $2,616.21. Wife, although unemployed at the time of the hearing, had a long history of employment and expressed a desire to work. In 1988, the parties purchased a home in Lugoff, South Carolina, that they intended to convert into a community retirement home which Wife would run.

In its final order, the Family Court ordered Husband to pay $250.00 per month rehabilitative alimony for two years. Wife was awarded the 1985 BMW automobile and the Lugoff home and all of its furnishings, for use as both a residence and retirement home. Husband was awarded the 1970 Camaro automobile, the 1991 truck, and the Bellhaven home and all of its furnishings. The court valued Husband's retirement plan and related accounts at $15,000.00 and awarded them entirely to Husband. The marital debt, excluding mortgages, was allotted 70% to Husband and 30% to Wife. The court also ordered Husband to pay Wife $10,000 as a final adjustment of the property division. Finally, the court ordered Husband to pay Wife $1,500.00 in attorney's fees, and the parties were ordered to split Wife's accountant's fee.

## II.

On appeal, Wife argues that the Family Court erred in: (1) awarding her rehabilitative alimony rather than permanent periodic alimony; (2) undervaluing Husband's three employer sponsored plans; and (3) improperly dividing the furnishings in the two marital homes.

### A. Rehabilitative Alimony Award

Wife contends that there is no evidence in the record to support an award of rehabilitative alimony. We agree.

Rehabilitative alimony is now expressly permitted by statute. S.C.Code Ann. § 20–3–130(B)(3) (Supp.1995). Its purposes are to encourage dependent spouses to become self-supporting after a divorce and permit former spouses to

develop their own lives free from obligations to each other. *Therrell v. Therrell*, 299 S.C. 210, 383 S.E.2d 259 (Ct.App. 1989). The Family Court should consider several factors in awarding rehabilitative alimony, including among other things, the parties' accustomed standard of living; the likelihood that the supported spouse will successfully complete retraining; and the likelihood of success in the job market. *See generally C.A.H. v. L.H.*, 315 S.C. 389, 434 S.E.2d 268 (1993) (court discussed prior case law under rehabilitative alimony statute); *Eagerton v. Eagerton*, 285 S.C. 279, 328 S.E.2d 912 (Ct.App. 1985) (court listed the eight factors which apply in awarding rehabilitative alimony). Rehabilitative alimony should be approved only in exceptional circumstances though, because it seldom suffices to maintain the level of support the dependent spouse enjoyed as an incident to the marriage. *Therrell*, 299 S.C. 210, 383 S.E.2d 259. The record must demonstrate the self-sufficiency of the recipient at the expiration date of the ordered payments and that the supported spouse will match the prior standard of living accustomed to during the marriage. *See Hickman v. Hickman*, 294 S.C. 486, 366 S.E.2d 21 (Ct.App.1988); *Crim v. Crim*, 289 S.C. 360, 345 S.E.2d 515 (Ct.App.1986).

■ Applying these factors here, we conclude that the trial court's award of rehabilitative alimony was improper because the record fails to demonstrate exceptional circumstances or that Wife will likely succeed in the Lugoff house venture within two years. It appears that the lower court's decision not to award periodic alimony was influenced in part on Husband's "valiant" efforts to preserve the property throughout the litigation, as well as Wife's own fault in causing the marriage breakup. Accordingly, upon remand, the Family Court, after making the requisite findings and considering the applicable factors, should award permanent periodic alimony in an amount it deems just and equitable. *See generally Crim*, 289 S.C. 360, 345 S.E.2d 515.

### B. Valuation and Award of Various of Husband's Financial Accounts

Wife also argues the Family Court erred in valuing Husband's three retirement accounts at $15,000.00, when the only

evidence presented on this issue proves a value of $42,854.25. After a careful review of the record (Wife's expert accountant's testimony, the letter from Husband's employer, Husband's financial statement, and each party's general testimony), we agree with Wife and find that the lower court erred.

■ This Court has recognized two common methods of valuing pensions: "(1) present cash value, and (2) distribution from each payment." *Smith v. Smith*, 308 S.C. 372, 375, 418 S.E.2d 314, 316 (Ct.App.1991) (citing *Martin v. Martin*, 296 S.C. 436, 373 S.E.2d 706 (Ct.App.1988)). Each method has its pros and cons, and in the instant case, the court chose present cash value. This method promotes finality and the severance of the entanglements between the parties, but its downside can be difficulty in valuation. *See* John H. Langbein and Bruce A. Wolk, *Pension and Employee Benefit Law*, 567–569 (2nd ed. 1995); *see also Johnson v. Johnson*, 285 S.C. 308, 329 S.E.2d 443 (Ct.App.1985). There is no set rule for how to determine present cash value. *Martin*, 296 S.C. 436, 373 S.E.2d 706. Typically, for determinations involving defined benefits (DB) plans, the trial court "calculates, using actuarial evidence, the present value of the pension. The court further calculates the percentage of the present value attributable to the marriage and the appropriate equitable share of the other spouse." *Martin*, 296 S.C. at 440–41, 373 S.E.2d at 709 n. 2; *see also Bishop v. Bishop*, 113 N.C.App. 725, 440 S.E.2d 591 (1994) (court described the method for trial courts to use in evaluating DB plans). In contrast, where a defined contribution (DC) plan is involved, the calculation is usually not as difficult, for such a pension is worth the stated account balance. Langbein & Wolk, *supra*, at 568. In either instance, the pension is usually awarded to the employee spouse and there is an offset of other marital property to the nonemployee spouse. *Martin*, 296 S.C. 436, 373 S.E.2d 706. However, experts' assumptions frequently conflict, and a plan's vesting status, possibility of forfeiture, and tax implications, are conditions which may impact the valuation of a plan. *See* Langbein & Wolk, *supra*, at 568–69; *see also Smith*, 308 S.C. 372, 418 S.E.2d 314 (testimony about these procedures and their application to the facts of each case must be placed in the record); *Graham v. Graham*, 301 S.C. 128, 390 S.E.2d 469 (Ct.App. 1990) (remand ordered where family court failed to properly

consider the tax consequences of early withdrawals in its valuation of an IRA).

■ Here, the court erred in finding that the value of Husband's retirement plans do not exceed $15,000. The evidence in the record is insufficient to support this figure. While Husband's financial declaration does refer to an attached "Benefits Resources" addendum, there is no addendum in the record or anything else in his financial declaration which actually quantifies the present value of his three plans. Moreover, the letter from Husband's employer lists the current total value of Husband's two DC plans at $6603.00 ($3,025.88 for the Savings and Investment Plan ("SIP") and $3,577.12 for the Tax Reform Act Stock Ownership Plan ("TRASOP")). However, this letter expressly does not provide a present value for Husband's DB plan, but only cites his expected monthly pension benefit when he reaches age 65. The testimonial evidence similarly does not support the court's finding. Husband's attorney vigorously cross-examined Wife's expert about his methodology, including the possibility of Husband not living to age 65, the discount rate the expert used, and the mortality table the expert used. However, Wife's expert never testified that the value of Husband's DB plan was anything other than $36,251.25. At most, on cross-examination Wife's expert testified that, using Husband's attorney's numbers, his figures might be reduced. Finally, neither Husband nor Wife in their testimony provided any specific dollar amounts for the values of the three plans.

Not only is the court's valuation of $15,000 unsupported, but under our review of the record, the evidence presented supports Wife's argument that Husband's three plans had a total present cash value of $42,854.25. *See generally Robinson v. Tyson,* 319 S.C. 360, 461 S.E.2d 397 (Ct.App.1995) (an appellate court reviewing a family court order may find facts in accordance with its own view of the preponderance of the evidence); *Hough v. Hough,* 312 S.C. 344, 440 S.E.2d 387 (Ct.App.1994) (husband could not complain on appeal about lower court's valuation of jewelry where he failed to present any evidence on the issue); *Carroll v. Carroll,* 309 S.C. 22, 419 S.E.2d 801 (Ct.App.1992) (wife could not challenge court's valuation of husband's pension plan where she failed to offer evidence to the contrary of husband's expert's valuation);

*Hardwick v. Hardwick,* 303 S.C. 256, 399 S.E.2d 791 (Ct.App. 1990) (where trial court valued retirement plans as stated on the husband's financial declaration, and husband offered no other values or evidence on liquidation, court did not error); *Toler v. Toler,* 292 S.C. 374, 379, 356 S.E.2d 429, 432 (Ct.App. 1987) ("In the absence of contrary evidence, the court should have accepted the value the parties assigned to" a marital asset). Wife's expert testified that when Husband reaches age 65 and starts receiving benefits, based both upon his life expectancy and monthly pension amount, the value of this plan would be $117,000.00. After discounting this figure based on a 6% rate, the expert testified that the "net present value of that future sum" was $36,251.25. The sum of this DB plan with Husband's two DC plans ($3,025.88 for the SIP and $3,577.12 for the TRASOP) equals $42,854.25.

We recognize that our finding of $42,854.25 increases the overall property award to Husband by more than $20,000.00, and there may not be enough other marital assets to allow an offset. *Martin,* 296 S.C. 436, 373 S.E.2d 706 (a court should consider this circumstance when handling a pension.) Because the lower court's order does not fully indicate the overall value or relative percentages of the marital estate, we decline to direct Husband to pay additional monies to equalize the property division. Instead, on remand, the Family Court, using the present record, should consider using the corrected value of Husband's Dupont plans ($42,854.25) and determine what percent is marital and divide the assets accordingly. Alternatively, the court may also consider utilizing the distribution from each payment method, and decide whether reserved jurisdiction or a QDRO is appropriate. *See generally Smith,* 308 S.C. 372, 418 S.E.2d 314; *Martin,* 296 S.C. 436, 373 S.E.2d 706; Langbein & Wolk, *supra,* at 548–580. In any event however, the court's equitable division should be in a manner to do justice and promote equity. *See generally Graham v. Graham,* 301 S.C. 128, 131–132, 390 S.E.2d 469, 471 (Ct.App.1990) (The "family court is not necessarily required to divide the assets either in the same way or in the same amounts as before.").

## C. *Division of the Furnishings*

Wife also argues that the Family Court erred in giving all the furniture in the Bellhaven marital home to Husband, while

giving her all the Lugoff home furniture which she should have received regardless, to start up the Lugoff business. In effect, Wife contends she received none of the marital furnishings the parties accumulated during the marriage.

The Family Court is given broad jurisdiction in the equitable distribution of marital property, and it may use any reasonable means to divide the estate equitably. *Murphy v. Murphy*, 319 S.C. 324, 461 S.E.2d 39 (1995); *Coxe v. Coxe*, 294 S.C. 291, 363 S.E.2d 906 (Ct.App.1987), *cert. dismissed as improvidently granted*, 298 S.C. 72, 378 S.E.2d 259 (1989). A party who objects to the court's distribution of marital property has the burden to show error. *See Ray v. Ray*, 296 S.C. 350, 372 S.E.2d 910 (Ct.App.1988); *see also Goodson v. American Bankers Ins. Co. of Florida*, 295 S.C. 400, 368 S.E.2d 687 (Ct.App.1988) (court will not consider facts that do not appear in the transcript of record).

Here, there is no list or testimony in the record of the furnishings of either residence. In the absence of such evidence, the Family Court did not abuse its discretion in giving each party all the property within the residences which they were awarded. Accordingly, Wife has not met her burden to demonstrate error or present this Court with a sufficient record to make an intelligent review.

### III.

Therefore, for the foregoing reasons, we reverse the Family Court's award of rehabilitative alimony and remand for a determination of an appropriate amount of permanent periodic alimony to award to Wife. We reverse the valuation of Husband's retirement plans and remand for a redetermination on the present record for the appropriate division of these plans. Finally, we affirm the court's distribution of the parties' marital furnishings. It is so ordered.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF and HOWARD, JJ., concur.