THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals
 

 
 
 
 Linda R. Asmussen, Appellant,
 
 
 

v.

 
 
 
 Patrick M. Asmussen, Respondent.
 
 
 

Appeal From Greenville County
Deborah Neese, Family Court Judge

Unpublished Opinion No. 2011-UP-301   
 Submitted March 1, 2011  Filed June 17,
2011

AFFIRMED

 
 
 
 O.W. Bannister, of Greenville, for Appellant.
 H. Michael Spivey, of Mauldin, for Respondent.
 
 
 

PER CURIAM:  Linda
 Asmussen (Wife) appeals from the family court's final divorce decree, arguing
 the court erred in (1) using Patrick Asmussen's (Husband's) contributions plus
 interest as the value of a defined benefit pension plan, and (2) not awarding
 her attorney's fees and costs.  We affirm.[1]
FACTS
Husband and Wife
 were married in 1992 in Iowa, and no children were born of the marriage.  In
 2007, Husband and Wife separated, and Wife moved to South Carolina.  Husband
 testified he moved to South Carolina two months after Wife moved to reconcile
 with Wife based on her request.  Wife testified she moved to be closer to her
 brother, and she did not want Husband to move to South Carolina.
In 2008, Wife
 filed a complaint in the Greenville County Family Court, seeking separate support
 and maintenance, equitable division of marital assets and debts, and attorney's
 fees and costs.  Husband filed an answer and counterclaimed for separate
 support and maintenance, equitable division of the marital property, alimony,
 and attorney's fees and costs.
At the final
 hearing on April 9, 2009, Wife moved to amend to seek a divorce on one-year's
 continuous separation.  Husband did not object, and the court granted the
 motion.  Husband and Wife agreed they had divided all personal property and
 each would keep the property in his or her possession.  Husband also withdrew
 his claim for alimony.  At the end of the hearing, Husband and Wife stipulated
 that: (1) they would equally divide the marital estate; and (2) the court would
 determine the present value of Husband's Iowa Retirement Plan.  Wife's expert
 testified that, using the life expectancy method of calculation, the value of
 Husband's retirement plan was $76,901.46 at the time of the hearing; however,
 Husband testified he called the Iowa Retirement Plan immediately before the
 hearing, and his retirement was valued at $31,000, including contributions and
 interest.[2] 
 On cross-examination, Wife's expert admitted Husband's cash surrender value, as
 of July 4, 2008, would have been a little less than $31,888.71.  Also, he
 admitted that as of the date of the hearing, the only amount Husband could have
 withdrawn from the plan was the cash surrender value.  The court found it
 noteworthy that Husband's retirement was negatively impacted by Wife's desire
 to move to South Carolina; his relocation to South Carolina; and her decision
 to seek a divorce.  
The family court
 filed its final divorce decree on June 24, 2009.  In the decree, the court made the following rulings: (1) Wife was entitled to a divorce on one-year's separation;
 (2) Husband and Wife were to keep all personal property currently in his or her
 possession; (3) all other marital assets were to be divided as provided in the
 order; (4) Husband's Iowa retirement account's present value was to be
 determined by the contributions plus interest method, resulting in a value of
 $31,000; (5) Husband and Wife were responsible for his or her own attorney's
 fees and costs; (6) Wife was to pay Husband $294.67 within 30 days of the
 filing of the order for half of the difference in distributions; and (7)
 Husband was responsible for the preparation of any qualified domestic relations
 orders necessary to effect distribution.  Wife filed a Rule 59(e), SCRCP,
 motion, which was denied by the court.  This appeal followed.
STANDARD OF REVIEW
On appeal from the family
 court, this court reviews factual and legal issues de novo.  Simmons v.
 Simmons, Op. No. 26970 (S.C. Sup. Ct. filed May 9, 2011) (Shearouse Adv.
 Sh. No. 16 at 29); see Lewis v. Lewis, Op. No. 26973 (S.C. Sup.
 Ct. filed May 9, 2011) (Shearouse Adv. Sh. No. 16 at 44).  Although this court
 reviews the family court's findings de novo, we are not required to ignore the
 fact that the trial court, who saw and heard the witnesses, was in a better
 position to evaluate their credibility and assign comparative weight to their
 testimony.  Lewis, Op. 26973 at 46-48.  The burden is upon the appellant
 to convince this court that the family court erred in its findings.  Id. at 49-51.
LAW/ANALYSIS
I.  Pension Plan
Wife argues the family court erred in using Husband's
 contributions plus interest to determine the value of his defined benefit
 pension plan.  We disagree.
Wife asserts this is error
 because it ignores the additional value the plans have to the holder.  Wife
 asserts the use of only contributions to value a pension plan was specifically
 rejected in Smith v. Smith, 308 S.C. 372, 418 S.E.2d 314 (Ct. App.
 1991).  Wife also claims that in Belton v. Belton, 325 S.C. 456, 461, 481
 S.E.2d 174, 174 (Ct. App. 1997), the court reiterated that defined benefit
 pension plans are calculated using actuarial evidence to arrive at the present
 cash value.  Thus, Wife requests we reverse the family court's determination of
 the value of Husband's retirement account; find the plan's present day value
 was $76,901.46; and remand the issue to the family court for an adjustment
 based on our finding.
The family court found the
 retirement plan in this case differed from those in Martin v. Martin,
 296 S.C. 436, 373 S.E.2d 706 (Ct. App. 1988), and Smith because, unlike
 here, benefits were being paid at the time of the litigation.  The court stated
 there were two common methods the court could use to value Husband's retirement
 plan: (1) the distribution from each payment method; and (2) the method of
 determining present value.  The court determined the distribution from each
 payment method was not appropriate under the facts of the case, and the parties
 agreed.  Thus, the court found the plan's present value could be determined by
 either contributions plus interest, or by a calculation using actuarial
 evidence and other factors.  The court concluded there is no set rule for
 determining present cash value, and each case must be individually analyzed based
 on its facts.  The court also noted courts are "encouraged to award the
 plan to the employee spouse where, as here, there are sufficient other marital
 assets to allow for an offset."  Therefore, the court found the present
 value of Husband's retirement plan to be $31,000, as reflected by contributions
 plus interest.
"[T]he [South Carolina] Code
 does not specifically define pension benefits as marital property, but this [c]ourt
 has consistently held that both vested and nonvested retirement benefits are
 marital property if the benefits are acquired during the marriage and before
 the date of filing."  Shorb v. Shorb, 372 S.C. 623, 629, 643 S.E.2d
 124, 127 (Ct. App. 2007).  "Even if the vested benefits have yet to
 mature, they are properly includable in the marital estate."  Id. at 630, 643 S.E.2d at 128.  In Tiffault v. Tiffault, 303 S.C. 391, 393,
 401 S.E.2d 157, 158 (1991), our supreme court determined that vested retirement
 benefits accrued during the marriage constituted an earned property right that is
 subject to equitable distribution.  In Ball v. Ball, 314 S.C. 445, 447,
 445 S.E.2d 449, 450 (1994), our supreme court agreed with the Tiffault court and found nonvested pension plans are also marital property.  The court
 determined "[i]t is within the discretion of the [f]amily court to
 determine, from the facts of each case, what portion, if any, of the benefits
 spouse is entitled to receive."  Id.  The court further found
 "the pension plan essentially has no value until vestment," and
 "a finding of no current value is sufficient" because "the court
 must only determine the portion of the plan to which the spouse is entitled."  Id. at 447-48, 445 S.E.2d at 450-51.   
In Martin, the husband
 had already begun receiving pension benefits at the time of the divorce
 hearing.  Id. at 439, 373 S.E.2d at 708.  The wife presented expert
 testimony concerning the value of the husband's retirement plan.  Id. 
 The expert based his computation on the following assumptions: (1) a
 twenty-seven year life expectancy for the husband under the mortality tables;
 (2) a constant real income stream of $735 per month; and (3) a discount rate of
 1.1% based on the average real rate of return on long-term government bonds.  Id. 
 The husband's expert witness gave no opinion on the value of the retirement
 account because he thought it was too speculative to value.  Id.  The
 court used the wife's expert's computation and an offset approach in the final
 distribution of the marital property.  Id. at 439-40, 373 S.E.2d at
 708.  On appeal, the husband argued the court erred in using the present cash
 value method to value and distribute his pension.[3]  Id. at 440, 373 S.E.2d at 709.  In rejecting his argument, this court
 determined "there were sufficient other marital assets to permit an
 application of an offset without working an inequity on the husband."  Id. at 441, 373 S.E.2d at 709.  This court further stated "[t]he trial court
 has wide discretion in determining equitable distribution of marital property
 and its judgment will not be disturbed on appeal absent an abuse of
 discretion."  Id.  The court found no abuse of discretion in the
 family court's use of the present cash value method, but "emphasize[d]
 there is no set rule in this area and each case must be analyzed and determined
 on its own facts."  Id.     
In Smith, the husband
 had already received a lump sum of his retirement benefits and was receiving
 monthly benefits at the time of the divorce hearing.  308 S.C. at 373, 418
 S.E.2d at 315.  Based on that and other facts, this court determined the trial
 court erred in valuing the husband's pension.  Id. at 374, 418 S.E.2d at
 316.  The Smith court stated that to evaluate the present cash value of
 a pension, the testimony of an actuary is essential.  Id.  Because the
 court did not have any actuarial evidence of record, the court adopted the
 distribution from each payment method of valuation.  Id.
In Belton, the family
 court valued the husband's three pension plans at $15,000, using the present
 cash value method.  325 S.C. at 460-61, 481 S.E.2d at 176.  On appeal, the wife
 argued this was error because the only evidence presented was that the accounts
 were valued at $42,854.25.  Id.  The evidence presented to the family
 court included: (1) the wife's expert accountant's testimony; (2) a letter from
 the husband's employer; (3) the husband's financial statement; and (4) each
 party's general testimony.  Id. at 461, 481 S.E.2d at 176.  This court
 noted the two methods for valuing pensions, present cash value and distribution
 from each payment, have both pros and cons.  Id.  The court stated the
 present cash value method "promotes finality and the severance of the
 entanglements between the parties, but its downside can be difficulty in
 valuation."  Id.  It also stated "[t]here is no set rule for
 how to determine present cash value."  Id. at 461, 481 S.E.2d at
 177.  The court quoted Martin, holding that courts typically use
 actuarial evidence to calculate the present cash value of a defined benefit
 plan.  Id.  This court concluded the family court erred in its valuation
 of the husband's plan because the evidence presented did not support the
 court's amount.  Id. at 462, 481 S.E.2d at 177.  Specifically, the
 husband's financial declaration failed to include anything that actually
 quantified the present value of his plans; the letter from the husband's
 employer listed the current value of husband's two defined contribution plans
 at $6,603.00, but it did not provide the current value of the husband's defined
 benefit plan; and neither the husband's nor the wife's testimony provided any
 specific dollar amount for the values of the three plans.  Id.  Thus,
 the court remanded the case to the family court to use $42,854.25 as the
 corrected value of the husband's plans, to determine what percent was marital
 property, and to divide the assets accordingly.  Id. at 463, 481 S.E.2d
 at 178.     
Based on our review of the
 relevant case law and the evidence presented, we find the evidence supports the
 family court's determination that Husband's retirement was valued at $31,000 at the time of the divorce
 hearing.  Although Wife's expert testified he calculated the value of Husband's
 retirement plan to be $76,901.46, Husband testified his retirement plan was
 valued at $31,000 immediately before the hearing.  Further, on
 cross-examination, Wife's expert admitted that as of the hearing, the only
 amount Husband could have gotten from his plan was the cash surrender value,
 which would probably have been a little less than $31,888.71.  We do not find any error in the family court's use of the present
 cash value method.
II.  Attorney's Fees and Costs
Wife argues the family court
 erred in not awarding her attorney's fees and costs.  We need not address this
 issue.
Wife asserts that Husband
 rejected her offer to divide his plan; thus, she had to have his plan valued by
 an expert at a cost of $1,106.25.  Wife asserts that we should award her
 attorney's fees and costs if we reverse the family court's determination of the
 value of Husband's pension plan.  However, we need not address this issue because we do not find any
 error in the family court's determination
 of the value of Husband's pension plan.  See Futch v. McAllister
 Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999)
 (holding an appellate court need not review remaining issues when its
 determination of another issue is dispositive of the appeal).
CONCLUSION
Accordingly, the family court's order is
AFFIRMED.
HUFF, SHORT
 and PIEPER, JJ., concur.

[1]  We decide this case without oral argument pursuant
 to Rule 215, SCACR.  
[2]  Wife's expert testified Husband's plan is a defined
 benefit plan, and Husband did not object.  Wife's expert calculated the value
 of Husband's plan using the following assumptions: (1) a four percent discount
 rate; (2) a benefit rate of twenty-four percent; (3) retirement at age
 fifty-five; and (4) a life expectancy of 77.39 years. 
[3]  The court described this method:  "The trial
 court calculates, using actuarial evidence, the present value of the pension. 
 The court further calculates the percentage of the present value attributable
 to the marriage and the appropriate equitable share of the other spouse. 
 Usually, the pension is awarded to the employee spouse and there is an offset
 of other marital property to the nonemployee spouse."  Id. at 440
 n.2, 373 S.E.2d at 709 n.2.