# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Saifei Yu, Respondent,

v.

Arpad Jonas, Appellant.

Appellate Case No. 2023-000882

———

Appeal From Sumter County
Thomas M. Bultman, Family Court Judge

———

Opinion No. 6108
Heard February 12, 2025 – Filed March 26, 2025

———

**AFFIRMED**

———

John Stephen Keffer, of Keffer Law Firm, of Sumter, for
Appellant.

Hugh Johnson McMillan, of Player & McMillan, LLC, of
Sumter, for Respondent.

———

**HEWITT, J.:** Arpad Jonas appeals the family court's final order and decree of
divorce awarding permanent periodic alimony and attorney's fees to Saifei Yu. He
asks that we reverse and remand for the family court to consider rehabilitative
alimony and reevaluate the award of attorney's fees. As outlined below, and after
exercising our de novo review, we respectfully disagree with his arguments and
affirm.

A statute empowers the family court to award several different types of support and
maintenance, including rehabilitative alimony. *See* S.C. Code Ann. § 20-3-130(B)

(2014). The statute explains rehabilitative alimony's purpose includes, but is not limited to, instances where the family court "finds it appropriate to provide for the rehabilitation of the supported spouse." § 20-3-130(B)(3). The statute also explains rehabilitative alimony includes "modifiable ending dates coinciding with events considered appropriate by the court such as the completion of job training or education" and "require[s] rehabilitative efforts by the supported spouse." *Id.*

Precedent explains that South Carolina law favors permanent periodic alimony. *Jenkins v. Jenkins*, 345 S.C. 88, 95, 545 S.E.2d 531, 535 (Ct. App. 2001). Rehabilitative alimony, on the other hand, is reserved for "exceptional circumstances" and may only be awarded if the record demonstrates that the recipient will be self-sufficient at the end of the ordered payments and will have the same standard of living from the parties' marriage. *Id.*; *Belton v. Belton*, 325 S.C. 456, 460, 481 S.E.2d 174, 176 (Ct. App. 1997). The hesitance to award rehabilitative alimony stems from the fact that it "seldom suffices to maintain the level of support the dependent spouse enjoyed as an incident to the marriage." *Johnson v. Johnson*, 296 S.C. 289, 301, 372 S.E.2d 107, 114 (Ct. App. 1988).

The abbreviated background of this case is as follows: The parties met over the internet. Jonas lived in South Carolina; Yu lived in China. Jonas invited Yu to this country, they married, and Yu quickly became pregnant. Jonas's earnings were the family's sole means of support throughout the marriage, even after Yu had to return to China with the parties' child. Yu and the child spent several years waiting in China before she could legally re-enter the United States.

We cannot agree with Jonas's argument that the record in this case supports reversing the family court's permanent periodic alimony award. Jonas relies on the fact that Yu graduated from high school and college in China, had a successful career in China, is able-bodied, and is capable of working. These things are true, and they are good points, but we also do not see how, on this record, the family court could have made the necessary findings that would stand up to the scrutiny precedent requires for a rehabilitative alimony award. During trial, Yu was employed as a teacher's aide at the school the parties' son attended. Her annual income was roughly $16,000. A prior job at Amazon that paid more had proved incompatible with Yu's schedule as a single mother, and neither of these jobs remotely provided the standard of living Yu and Jonas enjoyed as a married couple supported by Jonas's salary as IT director for a school district. Yu's testimony suggests that she has inquired about becoming a teacher but was told her language skills needed improvement, that she needed an additional degree or some sort of equivalent, and that even if she obtained a degree, it would take six months or a year to get a job. Yu said she was in the process of

transferring her degree to the United States but that even with her degree recognized as a bachelor's degree, her earnings as a paraprofessional would not change. We see nothing in the record from which a family court judge could sensibly determine what additional training Yu would need, what that training would cost, what length of time the training would require, and the amount of money Yu could expect to earn in whatever job (Jonas does not propose one) Yu could hope to secure. The preponderance of the evidence standard is not an exacting burden, but there was barely any testimony on these points, and certainly nothing from any expert.

We fully understand, and are not unsympathetic to, Jonas's argument that this was a relatively brief marriage, that Yu is educated, and that she may be in a position to greatly improve her prospects in the job market. Even so, we have already recounted precedent's requirement for rehabilitative alimony that the record "must" show the recipient will be able to match the standard of living enjoyed during the marriage at the end of the expired payments. *Belton*, 325 S.C. at 460, 481 S.E.2d at 176. Nobody attempted to satisfy these standards when this case was tried. Indeed, it appears Jonas did not mention rehabilitative alimony until his motion to reconsider, which strongly suggests his argument is not even preserved. *See Hickman v. Hickman*, 301 S.C. 455, 456, 392 S.E.2d 481, 482 (Ct. App. 1990) (holding a party may not use a posttrial motion to raise an issue that could have been raised prior to judgment). At trial, Jonas argued that he should only pay alimony for two years because his research showed alimony was "normally" for roughly half the length of the marriage and he believed two years was all Yu needed to catch up. We cannot see how a decision to award rehabilitative alimony in this case, on this record, would square with many of the cases we have already cited—cases where the family court awarded rehabilitative alimony only to have those awards reversed on appeal. *See Jenkins*, 345 S.C. at 97, 545 S.E.2d at 536; *Belton*, 325 S.C. at 460, 481 S.E.2d at 176; *see also Therrell v. Therrell*, 299 S.C. 210, 213, 383 S.E.2d 259, 261 (Ct. App. 1989).

Because we have not disturbed the family court's decision on alimony, we need not consider Jonas's argument that a modification of the alimony would also warrant an adjustment to the award of attorney's fees.

For the foregoing reasons, the family court's judgment is

**AFFIRMED.**

**KONDUROS, J., concurs.**

**THOMAS, J., concurring in part, dissenting in part:**  I respectfully concur in part and dissent in part.  As to the award of permanent, periodic alimony, I would reverse and remand for an award of rehabilitative alimony.  Our legislature has approved rehabilitative alimony, explaining the following:

> The purpose of this form of support may include, but is not limited to, circumstances where the court finds it appropriate to provide for the rehabilitation of the supported spouse, but to provide modifiable ending dates coinciding with events considered appropriate by the court such as the completion of job training or education and the like, and to require rehabilitative efforts by the supported spouse.

S.C. Code Ann. § 20-3-130(B)(3) (2014); *see Eagerton v. Eagerton*, 285 S.C. 279, 282, 328 S.E.2d 912, 914 (Ct. App. 1985) (stating "[t]he purpose of rehabilitative alimony is to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which the dependent spouse might retrain and rehabilitate himself or herself thereby limiting the duration of the time in which the supporting spouse is burdened by spousal support"); *see also Rudick v. Rudick*, 437 S.C. 270, 280, 878 S.E.2d 686, 691 (2022) (Few, J., dissenting) (questioning the preference for periodic alimony where the statutory alimony scheme does not provide for it).[1]  Several factors should be considered in awarding rehabilitative alimony, "including, among other things, the parties' accustomed standard of living; the time necessary for the supported spouse to acquire job training or skills; the likelihood that the supported spouse will successfully complete retraining; and the likelihood of success in the job market."  *Smith v. Smith*, 425 S.C. 119, 132, 819 S.E.2d 769, 776 (Ct. App. 2018).

After a de novo review of the evidence and the factors to consider in awarding rehabilitative alimony, I find the circumstances in this case are precisely what our legislature envisioned when defining rehabilitative alimony.  First, the marriage was short and Yu is young, healthy, and educated.  In addition, Yu testified she was transferring her degree to the United States and that once she obtained the transfer,

---

[1] As noted by Justice Few in *Rudick*, the preference for periodic alimony is not based in the statute, and many of the cases recognizing a preference "were decided before the comprehensive amendments to section 20-3-130 in 1990."  437 S.C. at 282, 878 S.E.2d at 692 (Few, J., dissenting).  The majority's opinion here is likely impacted by that preference.

she needed "a half year or one year [of] training to get a job."  Yu demonstrated the desire to improve her English skills, which she indicated would greatly improve her likelihood of success in the job market.  I find evidence demonstrating Yu could become self-sufficient within relatively few years and rehabilitative alimony should have been awarded.  *See Stone v. Thompson*, 428 S.C. 79, 91, 833 S.E.2d 266, 272 (2019)  ("Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings.").

I concur with the majority's affirmance of the award of attorney's fees.  The record on appeal demonstrates that Yu's ability to pay her own fees was limited, Husband was substantially more financially stable than Yu, and the family court made the required findings of fact regarding the factors considered in awarding attorney's fees and reviewed to determine their reasonableness.  *See E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992) ("In determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living."); *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991) (explaining the family court considers six factors in determining whether attorney's fees were reasonable: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services"); *Thornton v. Thornton*, 428 S.C. 460, 477, 836 S.E.2d 351, 360 (Ct. App. 2019) ("In awarding attorney's fees, the family court must make specific findings of fact on the record for each of the required factors.").