**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Pamela S. Ferguson, Appellant,

v.

Joseph R. Ferguson, Respondent.

Appellate Case No. 2023-000983

———————

Appeal From Horry County
Jan B. Bromell Holmes, Family Court Judge

———————

Unpublished Opinion No. 2025-UP-346
Heard December 3, 2024 – Filed October 8, 2025

———————

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART**

———————

Gregory Samuel Forman, of Gregory S. Forman, PC, of Charleston; and Marci Nicole Gattis, of Winslow Law, LLC, of Pawleys Island, both for Appellant.

Regina Bechtler Ward, of Law Firm of Regina B. Ward, LLC, of Myrtle Beach; and Nicole Nicolette Mace, of The Law Offices of Curt Sanchez, P.A., of West Palm Beach, Florida, both for Respondent.

———————

**PER CURIAM:**  Pamela S. Ferguson (Wife) appeals the family court's order of divorce and order partially granting her motion for reconsideration.  We affirm in part and reverse and remand in part.

"Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings." *Stone v. Thompson*, 428 S.C. 79, 91, 833 S.E.2d 266, 272 (2019).  Therefore, "this [c]ourt may find facts in accordance with its own view of the preponderance of the evidence." *Posner v. Posner*, 383 S.C. 26, 31, 677 S.E.2d 616, 619 (Ct. App. 2009).  "However, this broad scope of review does not require this court to disregard the family court's findings." *Id.* The appellant maintains "the burden of convincing [the appellate court] that the family court committed error." *Id.*

## I.  ALIMONY AND CHILD SUPPORT

### Husband and Wife's Income

Wife argues the family court erred in setting Joseph R. Ferguson's (Husband) monthly income at $18,289 for purposes of setting child support and alimony when Husband stipulated to a monthly income of $18,901.22 at trial.  We agree. Husband and Wife stipulated at trial that Husband's gross monthly income for 2021 was $18,901.22; however, Husband explained he did not expect to earn the same salary in 2022 because his employer is now fully staffed and he would work fewer overtime hours.  The family court found Husband's income to be $18,289, the same amount Husband listed on his financial declaration filed just before trial in June of 2022.  The paystubs attached to Husband's financial declaration show an average gross monthly income of $19,673.19.  Using the higher paystub figure is not warranted due to the variability in Husband's income and his expectation of working fewer overtime hours.  Nevertheless, the record is clear that he has the ability to earn a monthly income between $18,289 and $19,673.19; accordingly, we hold Husband's income is the amount he stipulated to at trial: $18,901.22.  Wife testified she can earn $38,000 to $45,000 annually if she worked full-time.  We find Wife should be able to earn $45,000 annually with her educational background and work history and impute that amount to her for purposes of calculating child support and alimony.  *See Stone*, 428 S.C. at 91, 833 S.E.2d at 272 ("Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings.").  We remand for purposes of recalculating child support and alimony utilizing the incomes imputed to the parties.

### Unreimbursed Medical Expenses

Wife argues the family court erred in failing to address unreimbursed medical expenses. We agree. The child support guidelines set forth that the custodial parent is obligated to cover the first $250 per year in unreimbursed medical expenses. S.C. Code Ann. Regs. 114-4720(12) (Supp. 2024). The guidelines further state that any "[r]easonable and necessary unreimbursed medical expenses in excess of this $250 per child per year shall be divided in pro rata percentages based on the proportional share of combined monthly adjusted gross income." *Id.*

The family court found Wife's $1,365 monthly recurring expense for unreimbursed medical expenses for the children unreasonable. We agree that a $1,365 recurring expense for the children's medical care is unreasonable because the record contains little evidence pertaining to the actual costs of the children's medical care. However, pursuant to the child support guidelines, Wife and Husband are still required to pay their pro rata shares of the children's reasonable and necessary medical expenses. Thus, we remand to the family court to calculate the parties' pro rata shares of the children's medical expenses based on the revised incomes above and the other factors to be included in calculating support.

**Marital Misconduct**

Wife argues the family court incorrectly analyzed marital misconduct and improperly "elevated" her alleged misconduct over Husband's adultery. We disagree. Wife testified that she filed the underlying action for divorce in February 2021; however, she discovered Husband's adultery in October 2019. Thus, we hold Wife condoned Husband's misconduct because Husband and Wife continued to cohabitate for sixteen months. *See McLaughlin v. McLaughlin*, 244 S.C. 265, 272, 136 S.E.2d 537, 540 (1964) ("Ordinarily condonation is an affirmative defense that must be pleaded; however, if the evidence shows condonation, it is the duty of the court even without pleading to find to that effect."); *id.* at 274, 136 S.E.2d at 541 ("A full resumption or continuance of marital cohabitation after the conduct complained of and with knowledge thereof, for any considerable period of time, quite conclusively shows an intention to forgive or condone such conduct." (citation omitted)); *id.* at 275, 136 S.E.2d at 542 (holding Husband and Wife's five months of cohabitation following Husband's marital misconduct–physical cruelty– constituted condonation even though their relationship appeared strained). Additionally, the order does not contain language that emphasizes or "elevates" one individual's actions over the other. In fact, the order contains no findings as to which party's actions led to the dissolution of the marriage; it merely outlines each party's conduct.

**Permanent or Rehabilitative Alimony**

Wife argues the family court erred in awarding rehabilitative alimony instead of permanent periodic alimony. She maintains that she will be unable to "sustain the marital lifestyle" without an award of permanent periodic alimony. We agree and find permanent periodic alimony is appropriate in this case. Husband earns $180,000 plus overtime annually. Wife has had an extended absence from the work force—she has not held a permanent full-time job for over a decade. Wife's income from 2006 to 2018 was less than $10,000 per year. In 2020, Wife made $10,582. Currently, Wife earns $1,535 per month. We acknowledge that Wife is underemployed and working part-time; however, Husband agreed for Wife to stay home and raise their children, and one child was still at home at the time of trial. We find Wife can earn $45,000 annually if she worked full-time. Additionally, Wife supported husband during his education, the parties were married for nearly twenty-two years, Wife was fifty-two years old at the time of trial, and Husband committed adultery. *See* South Carolina Code Ann. § 20-3-130(C) (2014) (setting forth the factors "the court must consider and give weight in such proportion as it finds appropriate" when awarding alimony); *Yu v. Jonas*, 445 S.C. 493, 495, 914 S.E.2d 501, 502 (Ct. App. 2025) ("Precedent explains that South Carolina law favors permanent periodic alimony."); *id.* ("Rehabilitative alimony, on the other hand, is reserved for 'exceptional circumstances' and may only be awarded if the record demonstrates that the recipient will be self-sufficient at the end of the ordered payments and will have the same standard of living from the parties' marriage." (quoting *Belton v. Belton*, 325 S.C. 456, 460, 481 S.E.2d 174, 176 (Ct. App. 1997))); *id.* ("The hesitance to award rehabilitative alimony stems from the fact that it 'seldom suffices to maintain the level of support the dependent spouse enjoyed as an incident to the marriage.'" (quoting *Johnson v. Johnson*, 296 S.C. 289, 301, 372 S.E.2d 107, 114 (Ct. App. 1988))); *Crim v. Crim*, 289 S.C. 360, 364, 345 S.E.2d 515, 518 (Ct. App. 1986) (holding the family court erred in awarding rehabilitative alimony when husband has a $100,000 salary, the couple had a high standard of living, wife was unemployed but highly educated and capable of working, and it was "unlikely . . . that the wife will ever match her former husband in earning capacity and that on her own she can ever achieve the high standard of living to which she and her children were accustomed during the marriage"); *Craig v. Craig*, 358 S.C. 548, 551–55, 595 S.E.2d 837, 839–42 (Ct. App. 2004) (holding wife was entitled to permanent periodic alimony rather than transitional alimony because husband was a physician who made $200,000 per year, wife was a nurse who made $60,000 per year, the parties had "significant marital property," and husband committed adultery).

We remand to the family court to recalculate alimony and child support in accordance with the foregoing.

## II.    EQUITABLE DISTRIBUTION AWARD

**Mortgage Interest Deduction**

Wife argues the family court erred in not awarding her the mortgage interest deduction and finding this issue unpreserved.  We hold this issue is unpreserved because Wife raised it for the first time in her motion for reconsideration to the family court.  *See Patterson v. Reid*, 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct. App. 1995) ("A party cannot for the first time raise an issue by way of a Rule 59(e) [SCRCP] motion which could have been raised at trial.").

**Roth IRA and Life Insurance Policies**

Wife argues the family court erred in finding Husband's Roth IRA was nonmarital property even though she contributed $16,000 to the account during the marriage.  Additionally, Wife argues the family court erred in finding Husband's USAA life insurance policies as nonmarital property when the premiums were paid for with marital funds.  We disagree.

Wife failed to produce objective evidence indicating Husband's Roth IRA was transmuted.  Husband's Roth IRA account number ends in 4745.  It was undisputed at trial that this account was owned by Husband prior to marriage.  The accounts Wife allegedly deposited the $16,000 into end in 7243, 7455, and 7638.  This evidence fails to establish these are the same accounts as Husband's Roth IRA; thus, we hold the record does not support Wife's argument.  *See Pruitt v. Pruitt*, 389 S.C. 250, 261, 697 S.E.2d 702, 708 (Ct. App. 2010) ("Transmutation is a matter of intent to be gleaned from the facts of each case, and the spouse claiming transmutation 'must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage.'" (quoting *Johnson*, 296 S.C. at 295, 372 S.E.2d at 111)); *Johnson*, 296 S.C. at 295, 372 S.E.2d at 111 (providing that objective evidence of transmutation "may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property"); *id.* at 295–96, 372 S.E.2d at 111 ("The mere use of separate property to support the

marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation.").

Further, we hold the family court did not err in finding the life insurance policies were nonmarital. Wife admitted at trial Husband should receive the policies. Thus, Wife may not now complain about this finding on appeal when she conceded the issue at trial.

**SEP IRA**

Wife argues the family court erred by using the cash value of her SEP IRA when it used the cash surrender value for Husband. We affirm. There is no evidence in the record as to the cash surrender value of Wife's SEP IRA. Wife and Husband's testimony regarding the value of the IRA was $9,286.59, its cash value. Thus, we hold the family court did not err in assigning the cash value to Wife's IRA. *See Noll v. Noll*, 297 S.C. 190, 194, 375 S.E.2d 338, 340–41. (Ct. App. 1988) ("In the absence of contrary evidence, the court should accept the value the parties assign to a marital asset."); *Hough v. Hough*, 312 S.C. 344, 347, 440 S.E.2d 387, 388–89 (Ct. App. 1994) (holding a party who failed to present any evidence on the issue of the value of the marital estate could not complain on appeal the family court erred in its valuation of the estate); *Roe v. Roe*, 311 S.C. 471, 478, 429 S.E.2d 830, 835 (Ct. App. 1993) (holding the family court has broad discretion in valuing marital property); *Woodward v. Woodward*, 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct. App. 1987) (holding a family court may accept the valuation of one party over another and the court's valuation of marital property will be affirmed on appeal if it is within the range of evidence presented).

**Children's Property**

Wife argues the family court erred by crediting Wife $107,223.41 for every asset intended for use by her children. She contends American Express Savings # 0330, Capital Group American Fund # 3674, 529 Plan #46-01, 529 Plan #46-02, 529 Plan #46-03, the 2018 Toyota Corolla, the 2010 Chrysler Sebring, and the 2004 Toyota Rav 4 were all acquired for use by the parties' children. Husband does not dispute this but instead argues the aforementioned property is marital because it is either in Wife's name or she has "the ability to control, transfer or sell these assets." We find the vehicles, 529 accounts, and bank accounts were acquired during the marriage in Husband and Wife's names; however, if any of the vehicles or accounts have been transferred into the names of the children, the property is non-marital. Thus, we remand to the family court for reconsideration of the equitable division

award with regard to this property.   And, to the extent the funds in any 529 account have been expended for the benefit of one or more of the children, the family court should not credit such an asset to Wife in equitably apportioning the marital property.  *See Crawford v. Crawford*, 321 S.C. 511, 514, 469 S.E.2d 622, 624 (Ct. App. 1996) ("Marital property is that real and personal property acquired by the spouses during the marriage which is owned by them at the date of filing of marital litigation."); *id.* at 514–15, 469 S.E.2d at 624–25 (holding the collectible dolls and toys purchased for the parties' children were properly designated nonmarital property).

## III.   ATTORNEY'S FEES

Wife argues the family court erred by requiring Husband to pay only $10,000 of her attorney's fees because the court's factual findings in support were erroneous.  In light of our reversal on the issues of Husband's income, alimony, and equitable apportionment, we also remand the attorney's fees award for the family court's consideration in conjunction with the matters on which Wife has prevailed on appeal.  *See Bojilov v. Bojilov*, 425 S.C. 161, 191, 819 S.E.2d 791, 807 (Ct. App. 2018) ("The appellate court may reverse an attorney's fees award when the beneficial results achieved by trial counsel are reversed on appeal."); *E.D.M. v. T.A.M.*, 307 S.C. 471, 477, 415 S.E.2d 812, 816 (1992) (reversing the award of attorney's fees where the substantive results achieved by counsel were reversed on appeal).

## CONCLUSION

The family court erred in finding Husband's income to be $18,289, awarding rehabilitative alimony to Wife, crediting Wife for the children's property, and failing to apportion their child's medical expenses pro rata.  We **REVERSE AND REMAND** to the family court to recalculate permanent alimony, child support, the equitable distribution award, and attorney's fees pursuant to this opinion.  We **AFFIRM** the remaining portions of the family court's order.  Accordingly, the family court's order is

**AFFIRMED IN PART and REVERSED and REMANDED IN PART.**

**WILLIAMS, C.J., and MCDONALD and TURNER, JJ., concur.**